# CHARLESTON.

### Baxter v. Tanner

(Lucas, President, Absent.)

Submitted January 15, 1891.—Decided March 11, 1891.

1. MISTAKE—DEED.

   Equity, on the ground of mistake, will cancel a deed which, by reason of an erroneous description incorporated therein by mistake, conveys a tract of land not intended to be conveyed.

2. MISTAKE—DECREE.

   Equity will, on the same ground, set aside and annul or correct a decree which is the result of mistake.

*W. E. R. Byrne* for appellant, cited 28 W. Va. 514 ; *Id.* 337 ; 23 W. Va. 222 ; 5 Wheat. 424 ; *Id.* 332 ; 17 W. Va. 131 ; 32 Me. 474 ; 2 Wash. C. C. 475 ; 5 Leigh. 4.

*J. E. Hays* for appellee.

BRANNON, JUDGE :

Appeal by F. J. Baxter from a decree of the circuit court of Clay county dismissing a bill in equity filed by him against Jefferson Tanner, seeking to correct a mistake in a deed, which mistake consisted in the insertion in the deed of courses and distances describing another tract of land. An action of ejectment had been brought by Purviance and Hazlehurst against Jefferson Tanner for the recovery of certain land, and a compromise was made, by which Tanner relinquished his adverse claim and purchased of Purviance and Hazlehurst a tract of about one hundred and forty four acres, and the ejectment was dismissed. Upon the bonds given for the purchase-money under such purchase Purviance and Hazlehurst and F. J. Baxter, who was entitled to the debt, brought a suit to sell the land, and a decree of sale was rendered, the land was sold and purchased by Baxter, and the sale was confirmed, and a writ of possession was awarded to Baxter. A deed was made by Purviance, Hazlehurst and Baxter, the last of whom had become owner of a large tract, of which this tract was a part, by purchase from Purviance and Hazlehurst, to Tanner, conveying a tract which contained the said erroneous courses and distances, and it was exhibited with the bill as a conveyance of the land which had been sold. The writ of possession described the land by such erroneous calls taken from said deed, and it was then discovered that such calls were not applicable to the tract purchased by Tanner, but to another tract, and of the land therein described Tanner was not in possession, and he could not be dispossessed of the land under the writ of possession.

Thereupon Baxter brought this suit, alleging that the metes and bounds of the land incorporated in said deed to Tanner were wrong, since they bounded a different tract from that which Tanner had purchased, and that the inser-

tion of such metes and bounds in said deed was purely a mistake and arose from the fact that there were two tracts adjoining on the same creek, of about the same size, and the scrivener of the deed having before him the figures or plats of these two tracts erroneously incorporated in the deed the boundary of the wrong tract; and, specifying in his bill the calls which should have been inserted in the deed, prayed that the mistake be corrected, and the deed reformed, and for general relief.

Tanner's answer denied these allegations in most general terms, but gave no explanation. It says the tract which he owned was one of one hundred acres. His evidence shows that his contention is that he did buy a tract of land of Baxter, but it was not the one on which he resides, but another one; and that the one on which he resides is a tract of one hundred acres, conveyed to him by his father. Baxter contends that Tanner gave up in the compromise of the ejectment his claim to this one hundred acres, and purchased one hundred and forty four acres covering it.

The only evidence to sustain Tanner's position is his own, and it is in conflict with that of Baxter and other witnesses as to this controverted point. Without detailing the evidence, we think it fairly shows that Tanner bought the land on which he resided. He does not deny that he was sued in ejectment, and that he compromised that suit. He must have been sued in ejectment, because he was in possession of this one hundred acres, which is covered by the one hundred and forty four acres, which, as Baxter claims, Tanner purchased in the compromise; and Tanner never was in possession of that tract which he says he purchased, nor did he demand possession of that tract after the purchase. Is it not reasonable that in the compromise he would purchase his home rather than another tract; and is it not likely that his adversary would sell that land for which he had sued, and which was in Tanner's possession, rather than land for which he had not sued, and of which Tanner was not in possession? Tanner would certainly not be sued for land not in his possession. Tanner was poor, and it is highly improbable that he would buy another tract instead of his home. To what land did the compromise relate?

Almost certainly to that Tanner lived upon. The tract which Jefferson Tanner says he purchased is a tract of which John A. Tanner was in possession, called the "Upper Tract," and involved in the ejectment, and Jefferson was not in possession of it. These facts, along with the depositions taken by the plaintiff, decidedly turn the scale of probability and likelihood in favor of Baxter's contention. Indeed, Tanner's theory is wholly unreasonable, and unsupported by any evidence but his own.

The case impresses me with the conclusion that when Jefferson Tanner had by means of the undisputed compromise procured the dismissal of the ejectment, which was brought as far back, likely, as 1870, and was dismissed in 1876, and found himself, as he admits, unable to pay for the land under his purchase, he determined to repudiate the compromise, fall back on his original adverse claim, and by the statute of limitation, under his long possession, defeat a new ejectment. Therefore I think the lines bounding the tract incorporated in said deed, and applicable, not to the tracts sold, but to one not sold, were by mistake inserted in the deed, and that equity should give relief against the injury consequent upon such mistake. Then, how far shall we go in repairing such injury? Clearly, the deed should be cancelled, for it fails to carry out the intent of the parties by conveying one tract, whereas another was intended to be conveyed. *Alexander* v. *Newton*, 2 Gratt. 266; *Allen* v. *Yeater*, 17 W. Va., 128; *Pennybacker* v. *Laidley*, 33 W. Va. 624 (11 S. E. Rep. 39). But there stands the decree selling the land. What land? Only that conveyed in the deed defined in those erroneous calls, not the other tract, for which plaintiff seeks a writ of possession as purchaser at the decree of sale, for that tract was never sold.

The only description in the bill of the land is "a tract of one hundred and forty four acres of land, situate on Stinson Fork of the West Fork," and the erroneous boundary contained in the deed filed as part of the bill, and giving the particular description. It is true that the bill alleges that on the sale the purchaser was put in possession, and continued therein; but what were the bounds of the tract?

We do not know. How far would the sheriff carry the defendant under the writ of possession? Shall we disregard the minute calls of the deed describing the land under the rule that *falsa demonstratio non nocet,* and take the mere allegation that he was in possession, indefinite and vague, as the certain description? Thus the evil of the mistake in that deed flows as a consequence into the decrees of sale and confirmation. The plaintiff must needs get rid of them also, for, should he seek to enforce his purchase-money by any other proceeding against the tract really sold, he would be met by those decrees, which have these legal effects: (1) They would show already one recovery on these self-same purchase-money notes, and thus bar another. (2) It could not be alleged by the plaintiff in a new bill that they were given for the lower, or Jefferson Tanner, tract, as the land really sold, because there are the bill, deed and decrees adjudicating and declaring that it was the other tract which was sold, and for which those notes were given. But the plaintiff, having succeeded in cancelling the deed and decrees, can not have the further relief asked by him, a writ of possession of the tract intended to be conveyed and sold under the decree, for the decree never sold that tract; and, the bill not having been directed against that tract, the defendant has never had a day in court to show that he does not owe for it, or any defence which he may have. He may, if he sees proper, file an original bill to sell the proper tract, as if the former suit of *Purviance* v. *Tanner* had never existed; or he may file in this cause an amended bill, alleging proper facts, and seeking the sale of the tract really sold, as we think such amended bill would be germane to this cause.

We shall annul said decrees as produced by such mistake. That equity will for accident or mistake impeach and set aside decrees is settled. *Byrne* v. *Edmonds,* 23 Gratt. 200; 1 Story, Eq. Jur. § 78; Pom. Eq. Jur. §§ 836, 871, 1377. Therefore we reverse the decree from which this appeal was taken, and, rendering such decree as should have been rendered by the Circuit Court, we cancel, set aside, and annul the said erroneous deed, and the decrees of sale and confirmation in said chancery cause of *Purvi-*

*ance* v. *Tanner*, and remand the cause to said Circuit Court with direction to allow the plaintiff to file such amended bill or dismiss the cause, as he may prefer.

REVERSED.   REMANDED.