# CHARLESTON

## KING *v.* THOMPSON.

Submitted September 8, 1905.   Decided December 5, 1905.

1. ADVERSE POSSESSION—*Interlock—Conveyance.*
   Rader made a bond for the conveyance of land to White. Afterwards Rader made a deed conveying land to King, said to take in part of the land included in the title bond. Possession under the title bond of the interlock would not be adverse to Rader while holding the legal title, but would be adverse to King from the date of Rader's deed to him.  (p. 456.)

2. EVIDENCE—*Parol to Explain Deed.*
   Parol evidence cannot be admitted, in an action of ejectment, to prove that by mistake land was included in the deed not intended to be included in it.  (p. 458.)

Error to Circuit Court, Roane County.

Action by William R. King against Jeff Thompson. Judgment for defendant, and plaintiff brings error.

*Reversed*

THOS. P. RYAN and J. M. HARPER, for plaintiff in error.
WALTER PENDLETON, for defendant in error.

BRANNON, PRESIDENT:

W. R. King brought ejectment against Jeff Thompson in Roane county, and the case resulted in a verdict and judgment for the defendant. Rader, it seems, made a bond in 1890, providing for the future conveyance to White of a tract of land. Derivatively under that title bond the defendant claims. A deed was made in execution of that title bond, 4th April, 1893, to Runner, its assignee. The plaintiff claims a tract under a deed from Rader and wife to him, 14th December, 1892. We suppose that Rader designed the tract sold to White and that sold to King to be coterminous. A parcel of land containing twenty-three acres and twenty-three poles is in dispute. King claims that his deed takes it in. Thompson claims that King's deed does not take it in, but that his deed does take it in. The case involves the true location of the lines of King's deed. Thompson claims that if King's deed does take in this disputed land, it is owing to a mistake in including within the deed from Rader to King land not intended to be included, and that owing to this mistake the land in dispute was included within the bounds of King's deed.

King claims that the court erred against him in giving an instruction to the effect that if White purchased from Rader a tract including the land in dispute, and that if the deed from Rader to King included the land in dispute, and if White and others under him, including the defendant Thompson, had been in actual possession of any part of the land in dispute, or included in the interlock, claiming the same under said title bond or deed, for more than ten years, the jury should find for the defendant, although the plaintiff's deed was older and although the plaintiff might have had actual possession of his land outside the interlock. This instruction told the jury that all the possession under the title bond from Rader to White was adverse and would count under the statute of limitations. That possession before deed to Runner was no tadverse and could not be counted under the statute of limitations in favor of Thompson. The reason is, that one in possession under an executory contract of purchase does not hold adversely to

his vendor. Why? Because, at common law, the purchaser has no title. He has only an equity under courts of equity, but the law court knows only legal title. The purchaser enters under the vendor. He is a tenant. The purchaser may sue for non-conveyance to get damages, but the law court knows him not as to title. So much is this so before section 20, chapter 90, Code, that the vendor could, by ejectment or unlawful detainer, even if the purchaser has paid purchase money and were entitled to a deed, turn him out. *Williamson* v. *Paxton*, 18 Grat. 475. Therefore, at law, possession of the vendee is possession of his vendor, not adverse until after deed. *McNeely* v. *Oil Co.*, 52 W. Va. 616; *State* v. *Harman*, 57 W. Va. 448. It is not adverse in a court of equity. In its eye the vendor holds the legal title in trust for the vendee, and the vendee holds the equitable title in trust for his vendor to pay purchase money. The vendee recognizes the still subsisting right of the vendor; the vendor is trustee, the vendee beneficiary of the trust. Their relation is mutual and friendly, and forbids adversary possession. They claim under the same title, both at law and in equity. Therefore, while Rader held legal title, possession under the title bond was not adverse to Rader. But how after Rader conveyed legal title to King? The legal title was no longer in Rader in trust for White. There was no contractual relation between King and White or those claiming under White. King claimed for himself. His claim was adverse to everybody. He did not recognize White's right, but claimed solely for himself. He was White's enemy. Having legal title, he is held to claim only in his own right against White, even against Rader. *Katchum* v. *Spurlock*, 34 W. Va. 597. Hence any possession under the title bond would be adverse to King from the date of his deed from Rader. Said instruction 8 was erroneous in declaring the whole time of possession under the title bond adverse, instead of from the date of King's deed. And plaintiff's instructions 1 and 5 are erroneous in running adverse possession only from the deed to Runner under the title bond to White. If there was possession under the title bond within the interlock, it ran from the deed from Rader to King, and was not postponed to the date of the deed from Rader to Runner.

The court gave the defendant's instruction 3, saying that if the part of the call in the deed from Rader to King running from the dogwood in the original long line to the ash and white oak pointers was put in the deed by mistake, and that the dogwood was intended to be the end of said long line in said deed instead of said points at the ash and white oak. pointers, and that the line on the surveyor's plat running from the white oak N. 11 3-4 W. 22.29 poles to three B. J. O. (now cut down); thence N. 7 E. 27.60 poles to a dogwood was the true line intended to be given in said deed, then they must find for the defendant. King's counsel complains of this instruction, because, as they claim, there was no evidence of such mistake. We need not discuss that matter for the reason that the instruction is plainly erroneous on another ground taken by King's counsel, that is, that even if such mistake was made, it could not be considered in an action of ejectment. How often is it necessary to reiterate that a solemn deed is the repository of what the parties intended, and. so convincing and conclusive of what they intended that at law no evidence would be received to contradict it, except for fraud? *Western Mining Co.* v. *Peytona Coal Co.*, 8 W. Va. 406; *Long* v. *Perine*, 41 *Id.* 314. As a general rule, however plain the mistake in a deed, it cannot be reformed or disobeyed by court or jury in a court of common law. It speaks for itself, and its words must be literally followed, because "Parol evidence cannot be admitted to vary or add to a deed, as a general rule." *Troll* v. *Carter*, 15 W. Va. 567; *Richardson* v. *McCanaughey*, 55 *Id.* 546. It passes legal title to the land regardless of the mistake. If a deed, by mistake, includes land within its bounds not intended to go into it, the only remedy is in equity to reform the deed. A court of common law cannot reform a deed. If it were to attempt it it could not be told afterwards that it had been reformed. All that could be done would be to introduce the law decision as *res judiacta;* but it would not show the reformation. Equity does this. *Baxter* v. *Tanner*, 35 W. Va. 60; 13 Cyc. 576; 24 Am. & Eng. Ency. L. (2d E.) 648. There are some instances where a line evidently mistaken has been taken as corrected at law. *Smith* v. *Davis*, 4 Grat. 50. But this instruction would let a jury correct several corners

and lines, in effect make another deed.    Our cases would not allow this.

If the jury find that the ash and white oak pointers are a corner in King's deed, and its calls follow the line repre-sented on the surveyor's plat from the corner, passing the small B. O., 3 B. O.'s (gone) to the W. O., (gone), hickory pointers, then the land in controversy is within that deed, and it passed to King legal title thereto, notwithstanding any such mistake.

Plaintiff's instruction 2 was properly rejected.    It said that if the defendant's deed did not cover the land in dis-pute, they should find for the plaintiff, unless the defendant had adverse possession for ten years, under color of title.    It omitted to say the jury must believe that the plaintiff's deed covered the land in dispute, and gave recovery solely on the fact that defendant's deed did not cover the land.    A plaintiff must himself show title, and cannot recover on the weakness of defendant's title.    With such modification, the instruc-tion would be good.

We are of opinion that there was no error in allowing the field notes of Ross to be given in evidence as tending to show, in the absence of the title bond from Rader to White, its boundaries, to be considered by the jury.

For these reasons we reverse the judgment and set aside the verdict and grant a new trial.

*Reversed.*