# CHARLESTON.

ALBERT WILT *et al.* v. E. H. CRIM.

Submitted January 25, 1921. Decided February 1, 1921.

1. EQUITY—*Equity will not Entertain Suit to Recover Damages for Fraud Amounting to Tort Remediable by Law.*

   Equity will not entertain a suit to recover damages for a fraud which amounts to a tort remediable by an action at law for fraud and deceit. (p. 629).

2. SAME—*Equity will not Entertain Suit for Fraud in Obtaining Stock Subscription.*

   Equity will not entertain a suit by a subscriber to the stock of a corporation, against an agent of such corporation, to recover from him damages sustained by such subscriber on account of false and fraudulent representations made by such agent in procuring the subscription. (p. 631).

Appeal from Circuit Court, Barbour County.

Suit by Albert Wilt and others against E. H. Crim. Decree for plaintiffs, and defendant appeals.

*Reversed and bill dismissed.*

*Arthur S. Dayton* and *Jno. A. Howard,* for appellant.
*A. M. Cunningham,* for appellees.

RITZ, PRESIDENT:

This appeal brings up for review a decree of the circuit court of Barbour county, in favor of the plaintiffs, for the amount paid by them for stock which they purchased in the Hales Mining and Milling Company, at the solicitation of the defendant.

It appears that in the month of September, 1911, the defendant, being interested in the Hales Mining & Milling Company, a corporation of the State of Colorado, engaged in the development of a silver and lead mine in that state, approached the plaintiffs, or one of them, with a view of selling stock in said company. The plaintiffs did become stockholders in the company, buying fifteen hundred dollars worth of such stock on each of two occasions. The bill alleges that the inducement to purchase said stock was certain representations and warranties made to them by the defendant at and before said purchase. They contend that the defendant represented to them that the corporation whose stock he was offering for sale was the owner of a valuable silver mine at Lake City, Colorado, with a mortgage thereon for the sum of $125,000.00; that the mine was worth very much more than this sum, for which reason the mortgage was not an excessive amount to carry; that the ore was very rich, being worth from forty to forty-two dollars a ton, and that there was a large amount of such ore in the mine; that money was needed for the further development of the mine, and that the stock which he was offering was the stock of the company, and the money derived from its sale was to be used for the purpose of further development in the way of erecting a dam, milling plant, tramways and other necessary improvements; that at and before the purchase by the plaintiffs of said stock, the defendant contracted and agreed with them that because of his large interest in the company he would personally see that the indebtedness of $125,000.00 was paid off when the same became due, so that the company would not on that account lose its properties. The bill then alleges that in fact and in truth the company did not own any mine in Colorado, but had a lease covering a mine with an option to purchase the same for the sum of $125,000.00; that the stock which the defendant was selling was not the treasury stock of the company, but was stock which had been issued to him as a promoter of the company, and that the money derived from its sale was not used for the development of the mine, but was appropriated by the defendant to his own use; that the defendant did not, in accordance with his promise, pay the amount necessary to

prevent the company from losing its property, but allowed the same to become in default, and the rights of the company in the mine to be forfeited for failure upon its part to comply with the terms of the option; that this was a part of the defendant's scheme from the beginning, it being his intention to sell as much stock as possible in this company, and then allow the rights of the company to be forfeited for nonfulfillment of its contract, and thereafter purchase the same from the original owner for himself and his associates, and exclude the plaintiffs from participation in the benefits. The bill prayed for a decree against the defendant for the amount paid by them for the stock which they purchased. The bill does not even ask that the contract be cancelled, but it does tender back to the defendant the certificates representing the stock purchased by the plaintiffs, with the exception of one of such certificates for five hundred shares, which had been theretofore sold. The defendant's answer to the bill denies all of the material allegations.

The parties to the suit testify at great length, and some evidence is introduced from other witnesses. The plaintiffs did not attempt to prove the allegation in their bill that the stock which they bought was not the treasury stock of the company, but was promotion stock which had been issued to the defendant, and that the money derived from the sale of this stock was appropriated by the defendant to his own use, and not to the benefit of the company as he represented to them it would be. On the other hand the proof is conclusive that this stock was the stock of the corporation, and that the money derived from the sale went into the treasury of the corporation and was used by it in the development of the mine. The court below found that the defendant had a fraudulent purpose from the beginning to induce plaintiffs to enter into this arrangement and invest their money in it, and then cause the company to forfeit its rights and secure the same for himself to the exclusion of the plaintiffs. It is agreed on all hands that the mining property upon which the company had a lease and an option to purchase was and is a valuable property, although the plaintiffs contend that it was not so valuable as the defendant represented it to be. It further appears that very shortly after the Hales Mining & Milling Company forfeited its rights the defendant,

together with S. A. Moore, purchased the property from the owner for the sum of $60,000.00 and the payment of the debts of the old company which were liens thereon. After this purchase they invited all of the stockholders of the Hales Mining & Milling Company to join them in the organization of the new company for the development of the property, the offer being to permit all of such stockholders to become interested in the new company upon exactly the same terms that they themselves would go into it. This offer was, however, declined by the plaintiffs, although it was accepted by practically all of the old stockholders.

The contention of the defendant which must first be considered is, has a court of equity jurisdiction to entertain the case made by the plaintiffs. It is insisted that giving to the plaintiff's testimony the most favorable construction of which it is capable, the case here presents no more than a tort committed against the plaintiffs by the defendant, for which an action at law for fraud and deceit would furnish a complete and adequate remedy, and the fact that the only relief furnished by the court in this case was a money decree against the defendant is relied upon as indicating that the remedy at law would be just as adequate as the remedy by this suit in equity. It is true in the bill it is alleged that the defendant was selling his own stock, and was appropriating the money derived from the sale to his own use. The proof, however, as before stated, abundantly shows that this allegation is not true. In fact, not the slightest effort was made upon the part of the plaintiffs to establish it, so that the contract really proven in this case is one made by the plaintiffs with the Hales Mining & Milling Company by which they subscribed to certain of its stock and paid therefor the sums of money for which they obtained a decree against Crim. The contention is that Crim is liable to them, not because he got the money, and not because they have a contract with him which equity will rescind, but because he committed a tort against them by making certain false and fraudulent representations, and certain guaranties in regard to the stock. No decree is asked, nor could any be entered in this suit, cancelling the contract of subscription, and cancelling

the certificates of stock issued to the plaintiffs, for the very good reason that no suit is brought against the other contracting party, Crim being the sole defendant. It is very well established that while courts of equity look with disfavor upon fraudulent transactions and open their doors to relieve against fraud and oppression, this will only be done when the law does not afford adequate relief to the injured party. It must be borne in mind that before the existence of courts of equity the courts of law afforded relief against fraud amounting to a tort by the action of fraud and deceit, and courts of equity only came into existence to afford relief in those cases where the courts of law did not furnish an adequate and complete remedy. Resort to these equity courts was never permitted where the relief sought could be obtained in the law courts. This distinction is much more than a formal or fanciful one. The constitution of this state, as well as the English constitution, guaranteed to a suitor the right of trial by jury, and this meant that litigant parties should not be deprived of a trial by jury in a case cognizable by the law courts at the time of the adoption of the constitutional provision. If the courts of equity are allowed to expand their jurisdiction so as to include all torts, or all causes of action in which there may be an element of fraud, a very large part of the litigation which has been heretofore exclusively cognizable in the courts of law will be transferred, at the election of the complaining party, to the equity courts. The case of *Jackson* v. *Stockert,* 75 W. Va. 482, is relied upon as sustaining the jurisdiction here. That case, however, has little or no application. That was a suit brought for the purpose of cancelling the contract because of fraud and having restitution. It was instituted against the owner of the stock which it was claimed was fraudulently sold, and not against an agent whom it is alleged committed a tort by making false representations which resulted in a sale, as is the case here. Upon the case made here, no relief whatever could be granted except that which was granted, to-wit, a money decree against the defendant for the damages which the plaintiffs claimed they sustained. In this state and in Virginia it has been repeatedly held that a court of equity has

no jurisdiction of a cause of action because of fraud amounting to a tort against the complaining party. *Meze* v. *Mayse,* 6 Randolph 658; *Buck* v. *Ward,* 97 Va. 209; *Kane* v. *Iron Co.,* 97 Va. 329; *Laidley* v. *Laidley,* 25 W. Va. 525; *Swarthmore Lumber Co.* v. *Parks,* 72 W. Va. 625; *Big Huff Coal·Co.* v. *Thomas,* 76 W. Va. 161.

We are clearly of the opinion in this case that there is no jurisdiction in equity to afford plaintiffs any relief. The various questions of controversy between the parties are peculiarly ones to be passed upon by a jury. It may be that the conduct of the defendant is subject to the interpretation placed thereon by the court below, but upon this we express no opinion. There being nothing asserted but a claim for damages arising from an alleged tort, the plaintiffs must resort to the tribunal having exclusive jurisdiction of such cases.

Our conclusion is, therefore, to reverse the decree of the circuit court of Barbour county, and dismiss the bill, without prejudice to the right of the plaintiffs to assert their claim in a proper tribunal.

*Reversed and bill dismissed.*