HARRY H. DYKE

*v.*

LENA K. ALLEMAN

(No. 9917)

Submitted September 16, 1947.   Decided October 14, 1947.

*Pennybacker & Crofton,* for appellant.

*K. C. Moore,* for appellee.

LOVINS, JUDGE:

This suit instituted in the Circuit Court of Wood County by Harry H. Dyke against Lena K. Alleman has a two-fold purpose, expressed in the alternative, namely: the cancellation of a deed of conveyance from plaintiff to de-

fendant; or, the reformation of said deed and the recovery of a decretal judgment from defendant in the sum of twenty-one hundred, sixty dollars.

The trial court sustained a demurrer to plaintiff's original bill of complaint, with leave to amend within thirty days from the date of entry of the decree. A pleading denominated an amended and supplemental bill of complaint, which is actually an amended bill, was seasonably filed, remanded to rules, and process issued thereon. When the cause came on again for hearing, defendant interposed a demurrer to the amended bill which was sustained, with leave to amend. The trial court, having been informed by plaintiff that he did not desire to amend his amended bill of complaint, dismissed the suit at the cost of plaintiff. From that decree plaintiff prosecutes this appeal.

The amended bill prays that the original bill of complaint and the exhibits filed therewith be treated as a part of the amended bill. Therefore, we treat the two bills of complaint as a single pleading. *Straughan* v. *Hallwood,* 30 W. Va. 274, 291, 4 S. E. 394.

Plaintiff alleges that he *"is seventy-six (67) years"* of age, and that he owned and resided upon a farm containing 223½ acres, made up of four adjoining tracts. He further alleges that the farm is worth eight thousand dollars, and that he refused an offer of forty-five hundred dollars therefor.

Plaintiff owed defendant the sum of twenty-four hundred dollars, evidenced by a note dated June 9, 1934, due one year after date, and secured by a trust deed conveying the 223½ acres. At the time of the execution of the trust deed defendant took plaintiff's title papers, which, according to plaintiff's bills of complaint, showed that he did not own the land in fee, and that he did not own an undivided one-half interest in a certain 100-acre tract hereinafter mentioned.

Plaintiff states that he is ready and willing to pay the note and interest if the deed hereinafter mentioned should be cancelled.

In the year 1944 plaintiff was informed that defendant intended to sell the land under the trust deed, and thereupon he entered into negotiations with defendant, in the course of which defendant requested plaintiff to convey the farm to her in settlement of the principal and accrued interest of said note. Plaintiff alleges that he refused to accede to that request, and negotiations continued, resulting in an agreement whereby defendant obligated herself to pay plaintiff the sum of six thousand dollars for the farm, from which sum was to be deducted the amount of the principal and accrued interest of said note. As a part of the consideration for the conveyance, defendant agreed that plaintiff should be allowed to remain on the farm to "conduct the farming operations thereon," and that the profits derived should be equally divided between plaintiff and defendant. Notwithstanding such agreement, defendant has notified plaintiff to vacate the farm, and has converted all the profits from the farming operations to her own use.

After the agreement above mentioned was reached, plaintiff and defendant went to the office of an attorney in the City of Parkersburg, where the attorney prepared a deed conveying the farm to defendant. Plaintiff executed the deed without reading it, and thereupon the deed was handed to defendant, who caused it to be recorded in the office of the Clerk of the County Court of Wood County. The conveyance made no exception of the oil and gas, and also described one tract as a one-half undivided interest in a 100-acre tract of land, formerly owned jointly by plaintiff and O. N. Newbanks.

The allegations of the bills of complaint are to the effect that the plaintiff did not own the oil and gas in and underlying said lands. Furthermore, it is alleged that by deed bearing date the 28th day of December, 1925, he, together with the heirs of O. N. Newbanks, partitioned the 100-acre tract of land, so that 50 acres thereof described by metes and bounds were conveyed to him, and that he had conveyed the remaining 50 acres to his co-owners. These

allegations are supported, in a measure, by exhibits filed with the original and the amended bills of complaint. We also note that tract No. 1 in the deed is described as being a "50-acre" tract, the residue of a tract containing 106 acres, 66 acres of which had been conveyed to other persons. A simple mathematical deduction would indicate that tract No. 1 contained 40 acres, rather than 50 acres as described in the deed.

Some time after the recordation of the deed, plaintiff requested defendant to pay him the difference between the principal and accrued interest of the note and the purchase price of the land, amounting to twenty-one hundred, sixty dollars. Defendant declined to pay plaintiff, and stated that she did not promise to pay him such amount and had never intended to "allow" him any more as the purchase price of the farm than the amount of the above-mentioned note and the accrued interest thereon.

Plaintiff further alleges that the failure to include an exception of the oil and gas in the deed and the erroneous description of his interest in the 100-acre tract was a mistake on his part, and that it was either a mistake also made by defendant or was a deliberate and fraudulent act on her part.

He prays that the deed executed by him to defendant be cancelled; or, in the alternative, that it be reformed so as to contain an exception of the oil and gas in and underlying said tracts of land, as well as a proper description of the 50 acres conveyed to him by the heirs of Newbanks; and that if such reformation be decreed that he recover from defendant the sum of twenty-one hundred, sixty dollars.

Defendant assigns many reasons in support of her demurrers to the original and amended bills of complaint, the substance of which is that equity has no jurisdiction, and that plaintiff does not plead sufficient facts to entitle him to equitable relief.

Plaintiff grounds his suit on two propositions: (1) That fraud was committed by defendant in obtaining delivery

of the deed and her subsequent failure to pay him in accordance with her agreement; and (2) that, if the allegations of the bill do not justify rescission of the deed, the deed should be reformed on the ground of mutual mistake of fact or mistake on his part and fraud committed by defendant, and, if the deed be reformed, he is entitled to a decretal judgment for twenty-one hundred, sixty dollars.

Consideration of the first ground relied on by plaintiff gives rise to the following questions: (1) Can fraud be predicated on a promise made by defendant, and subsequently breached by her, and (2) treating such promise and breach as the sole ground for equitable relief, can the deed be rescinded on such ground?

"In morals the failure to perform a promise may be without excuse or justification; but in law false representations to authorize the recission of a contract must be made in regard to *existing facts.*" *Love* v. *Teter,* 24 W. Va. 741. But a person relying upon a promise which the promisor never intended to keep, such promise being the means whereby the fraud is perpetrated, the nonperformance of the promise may constitute fraud. *Davis* v. *Alford,* 113 W. Va. 30, 166 S. E. 701. The rule laid down in the *Davis* case is an exception to the general rule stated in the *Love* case.

In the case at bar the promise of defendant to pay plaintiff the sum of six thousand dollars for his farm made prior to the delivery of the deed to her did not relate to an existing fact, but was to be performed in the future. Applying the general rule of the *Love* case, plaintiff does not allege sufficient facts which, if proved, would authorize rescission of the deed. But plaintiff alleges that defendant made a promise, and, when he demanded payment of the balance of the purchase price, she denied making the promise and stated that she never intended to pay him more than the amount of the principal and interest on the note. We think that the allegations with reference to defendant's intention, coupled with her statement that

she never made such promise, may be an evidentiary matter tending to bring this case within the rule of *Davis* v. *Alford, supra.* In other words, if it should be established by proof that defendant agreed to pay six thousand dollars for the farm and had no intention of performing the promise, and plaintiff relied thereon, whereby defendant fraudulently procured the delivery of the deed, the rule in *Davis* v. *Alford, supra,* would be applicable. But in the present state of the record it is not clearly alleged that defendant made a promise which she did not intend to perform, thereby perpetrating a fraud upon plaintiff.

Furthermore, has plaintiff an adequate remedy at law in this respect? Generally speaking, equity will assume jurisdiction to relieve against fraud. *Kimmell* v. *Twigg,* 88 W. Va. 531, 107 S. E. 206. This Court has taken somewhat varying positions on the question whether an adequate, complete and efficacious remedy at law will preclude relief in equity where a contract or deed is procured by fraud. In *Coal Co.* v. *Thomas,* 76 W. Va. 161, 85 S. E. 171, it was held that a contract may not be cancelled by a court of equity on the sole ground that it was obtained by fraudulent representations, because an action for fraud and deceit would afford a "full, adequate and complete remedy." In the case of *Wilt* v. *Crim,* 87 W. Va. 626, 105 S. E. 812, it was reasoned that fraud constituting a tort was not ground for equitable relief. See *Berisford* v. *Lynch,* 98 W. Va. 121, 126 S. E. 492, and *Zogg* v. *Hedges,* 126 W. Va. 523, 527, 29 S. E. 2d 871. But different views have been expressed by this Court. The case of *Bruner & McCoach* v. *Miller,* 59 W. Va. 36, 52 S. E. 995, is authority for the proposition that a contract affecting an estate or interest in land may be rescinded on the ground of fraud in the procurement thereof, or mutual mistake of the parties in making the deed or contract, and that the jurisdiction of equity is exclusive. It was held in the case of *Jones* v. *Comer,* 123 W. Va. 129, 13 S. E. 2d 578, that "Fraud in the procurement of a deed or contract always renders it voidable."

The facts of the case of *Coal Co.* v. *Thomas, supra,* disclose that therein there was a contract for the sale of land; that no money had been paid; and that no one had suffered a disadvantage which could not be compensated by a money judgment. A similar situation appeared in the case of *Wilt* v. *Crim, supra.* The language used by this Court in *Coal Co.* v. *Thomas, supra,* is too all-inclusive, and should have been restricted to the facts disclosed therein. We now hold that fraud in the procurement of a contract renders it voidable at the suit of the person defrauded.

In the case at bar plaintiff admits that he agreed to sell his land for the price of six thousand dollars, and, if his deed to defendant had contained a proper exception of the oil and gas and a correct description of the 50-acre tract of land, the only demand he could enforce against defendant would be the recovery of the difference between the aggregate of the note, with accrued interest thereon, and the sum of six thousand dollars. We think that plaintiff cannot rely on the first ground for equitable relief.

But there is another element in this case relating to the allegations of mutual mistake or mistake and fraud. A deed may be reformed on the ground of mistake on the part of the plaintiff and fraud or other inequitable conduct on the part of defendant, but the fraud of defendant must be clearly and fully established by proof. *Fruit Co.* v. *Parks,* 108 W. Va. 321, 150 S. E. 749. An erroneous description embodied in a deed by mistake may be reformed and, in some instances, cancelled in a court of equity, where the deed conveys land not intended to be conveyed. *Baxter* v. *Tanner,* 35 W. Va. 60, 12 S. E. 1094. The failure to incorporate in the deed an exception relating to the oil and gas, occasioned by mutual mistake, is a ground for reformation of the deed. See *Johnston* v. *Terry,* 128 W. Va. 94, 36 S. E. 2d 489.

The allegations of plaintiff's bills show that the failure to except the oil and gas and the erroneous description of

the 50-acre tract was occasioned by mutual mistake or by a mistake on his part and fraudulent intent on the part of the defendant. We are not now concerned with the proof, but it is not amiss to say that fraud on the part of defendant must be clearly and fully established. Moreover, if plaintiff did not intend to convey the oil and gas or an undivided interest in the 100-acre tract and defendant knew, by examination of plaintiff's title papers, that he did not own the oil and gas and an undivided interest in the 100-acre tract, such situations give a clear right to reformation of the deed. *Baxter* v. *Tanner, supra; Johnston* v. *Terry, supra.*

The deed of conveyance contains a covenant of general warranty, which places on the plaintiff the burden of defending the title to property which admittedly he did not own. Hence, he is in a position of suffering a loss.

Therefore, we reach the conclusion that plaintiff has alleged sufficient facts in his bills of complaint to entitle him to reformation of his deed, if the facts are established by proof. And the court, having taken jurisdiction in equity for that purpose, has jurisdiction for all purposes, including the allegations relating to fraud in the procurement. *Chrislip, et al.* v. *Teter, et al.*, 43 W. Va. 356, 27 S. E. 288.

Therefore, the decree of the Circuit Court of Wood County is reversed, and the cause remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*