704 S.E.2d 691

**TRADERS BANK, Plaintiff Below, Petitioner**

v.

**Sherman DILS, III, Pamela Dils, and Dils Rentals, Inc., Defendants Below, Respondents.**

**No. 35497.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 13, 2010.

Decided Nov. 18, 2010.

L. Jill McIntyre, Ryan E. Voelker, William F. Dobbs, Jr., Jackson Kelly, Charleston, WV, for Petitioner.

James R. Leach, Victoria J. Sopranik, Dils and Leach, PLLC, Parkersburg, WV, for Respondents.

McHUGH, Justice:

This case is before us on certified question and presents the issue of whether a promissory note maker has standing to assert a tort claim of fraud in the inducement as a defense and counterclaim to a lender's attempt to enforce the note where the maker relied upon the lender's oral promise, which the lender had no contemporaneous intention of fulfilling, and where the beneficiary of such promise was a third-party. Upon our careful consideration of this issue, we determine that a promissory note maker does have standing to assert fraud in the inducement under the

factual scenario presented by the certified question.

## I. Factual and Procedural Background

In November 1999, Petitioner Traders Bank entered into a $2 million floor plan financing agreement ("Floor Plan") with Sherman Dils IV (hereinafter referred to as "Brett Dils") to supply the necessary financing for operation of the St. Mary's Ford–Mercury, Inc. car dealership ("Dealership") that Brett Dils owned. Pursuant to this agreement, the new motor vehicles purchased from the manufacturer served as the necessary collateral. In March 2002, this financing agreement was modified to reserve $500,000 of the $2 million Floor Plan for the financing of a line of Dodge vehicles at a second location.[1]

In January 2004, Traders Bank discovered that the Dealership was in severe default of the Floor Plan[2] as inventory and proceeds valued at $1,110,000 had disappeared.[3] Under the Floor Plan, the Dealership was required to pay Traders Bank within two days

of a vehicle's sale.[4] As a result of the non-payment of these funds, the Floor Plan was deemed to be "out of trust" and Traders Bank put a financial hold on the financing arrangement it had with the Dealership.

On February 19, 2004, Respondent Sherman Dils III, the father of Brett Dils, executed a commercial variable promissory note payable to Traders Bank in the amount of $1,110,000.00 to cover the Dealership's "out of trust" obligation.[5] The promissory note was secured by deeds of trust on multiple parcels of real estate owned by Sherman Dils, his wife Pam, and his business, Dils Rental, Inc. After Sherman Dils executed the note, Traders Bank partially reactivated the Floor Plan.[6]

Fourteen months after Sherman Dils signed the promissory note, the Dealership went under.[7] Prior to this time, Sherman Dils had been forced to sell two of the pieces of real estate that he had pledged as security for the promissory note.[8] On April 21, 2005, Traders Bank called the promissory note due and payable that Sherman Dils had executed.

1. On March 29, 2002, the Dealership signed a promissory note in the principal amount of $1,500,000.00 payable to Traders Bank and separately entered into a loan and security agreement to establish an automobile dealership floor plan for vehicle financing purposes.

2. The default was discovered when Traders Bank performed floor plan checks on January 14, 2004, and January 23, 2004. Under the Floor Plan, these checks were supposed to be conducted on a monthly basis by Traders Bank.

3. As a result of the floor plan check that Traders Bank performed in January 2004, it was determined that some of the missing vehicles had been sold the previous July. *See supra* note 2.

4. Pursuant to the formal Loan and Security Agreement between Traders Bank and the Dealership, Traders Bank would directly issue payment for a vehicle to Ford upon its receipt of an invoice and manufacturer's statement of origin for each respective vehicle sold. The Dealership had two days after the sale of a vehicle to repay Traders Bank for the advance in funds. Upon its receipt of the sales price of the vehicle, Traders Bank would forward the manufacturer's statement of origin to the Dealership so that the vehicle could be issued a new car title in the buyer's name. As collateral for the agreement, Traders Bank retained a security interest in the Dealership's vehicles.

5. At the time that Traders Bank put a financial hold on the Floor Plan, the Dealership had two

large purchases in the works, one with the West Virginia State Police that involved approximately 200 vehicles and another one with Mylan Pharmaceuticals through Enterprise Leasing that involved 600 vehicles. Through the execution of the promissory note, Sherman Dils sought to permit those putative deals to reach completion. In his affidavit, he explained that because "the Dealership had been put on financial hold with Ford," the vehicles to be purchased by the state police and Enterprise Leasing "could not be shipped until the hold was lifted."

6. Traders Bank extended $350,000 to the Dealership for the purchase of vehicles from Ford and $300,000 for the purchase of vehicles from Dodge. Of these amounts, $39,834.22 was available to buy new Ford vehicles and $26,269 to buy new Dodge vehicles. The remainder was allocated to vehicles the Dealership already possessed.

7. The Dealership's business ended in May 2005.

8. On September 9, 2004, Sherman Dils sold one piece of real property and voluntarily paid the net proceeds ($245,000) to Traders Bank in partial payment of the principal owed under the note. On November 12, 2004, a second parcel was sold with the proceeds of $200,000 being paid to Traders Bank against the principal balance of the note.

On April 25, 2005, Sherman Dils made one additional payment, which was for interest only, on the subject promissory note.

In December 2005, Traders Bank took steps to advertise a sale of the remaining real estate that Sherman Dils had pledged as security for the promissory note. When the Dils obtained a restraining order to stop the intended sale,[9] Traders Bank initiated a civil action in the Circuit Court of Roane County to collect the unpaid principal balance of $665,000 on the note plus interest. In response to the complaint, Sherman and Pam Dils asserted a defense and a counterclaim based on their contention that Traders Bank had fraudulently induced Sherman Dils into executing the promissory note at issue by verbal assurances that it would fully reinstate the Floor Plan in the amount of 1.5 million. Because that promise was not fulfilled, and because Traders Bank knew that it would not fully reinstate the Floor Plan agreement when this promise was made,[10] Respondents claim that they incurred financial harm by having to sell parcels of real property in order to make payments on the note.

In September 2009, Traders Bank moved for summary judgment on its claim and for dismissal of the counterclaim,[11] asserting that Respondents lacked standing to raise a claim for fraudulent inducement because the beneficiary of the alleged oral promise was a third party—the Dealership. While the circuit court denied both of these motions, it agreed to certify the following question[12] to this Court:

Where a plaintiff lender seeks to recover a debt on a promissory note, does the maker of the promissory note have standing to assert, as a defense and counterclaim, a tort claim of fraud in the inducement, on the basis that the maker relied upon the oral promise of the lender (that the lender knew or should have known would not be fulfilled), where the lender claims that it is relevant that the promise made was for the benefit of a third party, but where the counterclaimant asserts that it is the deceit by false promise, not the nature of the promise, which gives rise to standing in a tort claim of fraudulent inducement.

By order dated March 4, 2010, this Court accepted the certified question and docketed the matter for resolution. We proceed to address the question certified to us from the circuit court.

## II. Standard of Review

■ As we recognized in syllabus point one of *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996), "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Applying this plenary standard of review, we proceed to address the certified question.

## III. Discussion

■ As we articulated in syllabus point three of *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993), the authority of this Court to reframe a certified question is statutory in nature:

When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W.Va.Code*, 51–1A–1, *et seq.* and *W.Va.Code*, 58–5–2 [1967], the statute relating to certified questions from a circuit court of this State to this Court.

We find it necessary to reformulate the certified question as follows to fully address the elements of the tort of fraudulent inducement:

9. The Dils obtained an *ex parte* ruling in their favor in Wood County.

10. Although Respondents aver in their counterclaim that Traders Bank "knew or should have known" that the Floor Plan would not be reinstated, a claim of fraudulent inducement can only be demonstrated by evidence that Traders Bank had no present intention of fulfilling the

alleged promise to fully reactivate the Floor Plan at the time it made the alleged promise. *See infra* note 19.

11. *See* W.Va.R.Civ.P. 12(b)(6).

12. The circuit court answered the question in the affirmative.

Where a lender seeks to recover a debt on a promissory note, does the maker of the promissory note have standing to assert a tort claim of fraud in the inducement as a defense and/or a counterclaim where the maker relied upon the oral promise of the lender to his financial detriment that the lender had no contemporaneous intention of fulfilling and where a third party was the beneficiary of the oral promise?

■ The matter before us involves the exception to the general rule that fraud cannot be predicated on a promise not performed. *See Davis v. Alford,* 113 W.Va. 30, 166 S.E. 701 (1932). This exception, as we explained in *Davis,* comes into play where the device used to accomplish the fraud is the promise itself. *Id.* at 32, 166 S.E. at 702. The plaintiff in *Davis* had been induced by the defendant's verbal promise that he would purchase a piece of property at a trustee sale [13] and then cause the deed for the property to be placed in plaintiff's name.[14] After the defendant successfully bid on the subject property, he had the deed for the property put in his own name and then refused to deed the property to the plaintiff as promised. Given his considerable investment of money in the property prior to the default sale, the plaintiff brought suit against the defendant for deceiving him by false promise. In upholding the jury's verdict in favor of the plaintiff, we recognized what we referred to as the "fraudulent promise" rule, stating that "fraud may be predicated upon the failure to perform a promise where the promise is the device [used] to accomplish the fraud." 113 W.Va. at 32, 166 S.E. at 702 (internal quotation omitted). Applying that exception to the facts in *Davis,* we explained:

What the plaintiff relies upon is not the breach of a verbal promise to convey (or cause to be conveyed) real estate, but the deceiving of plaintiff by a false promise made to him by the defendant, without intention of performance by him, for the fraudulent purpose of putting him in an advantageous position at the expense of

the plaintiff, and acted upon by the plaintiff to his detriment.

113 W.Va. at 33, 166 S.E. at 702.

In *Dyke v. Alleman,* 130 W.Va. 519, 44 S.E.2d 587 (1947), we revisited the issue of whether fraud can be predicated on a promise that is subsequently breached. In *Dyke,* the defendant allegedly offered to pay the plaintiff $6,000 for his farm and to deduct from that purchase amount $2,400 plus interest that the plaintiff owed to her. After the deed for the farm had been recorded in the defendant's name, the plaintiff requested $2,160, which was the difference between the principal and accrued interest of the note and the purchase price of the farm land. Not only did the defendant refuse to pay the plaintiff the requested amount, but she stated that she never intended to pay him any more than the amount of the note and accrued interest. *Id.* at 522, 44 S.E.2d at 590.

Based on the defendant's purported promise to purchase the farm land for a set amount coupled with the later denial of any intent to pay that amount, we determined that the case appeared to fall within the rule we announced in *Davis. Dyke,* 130 W.Va. at 524, 44 S.E.2d at 590. As we observed: "[I]f it should be established by proof that defendant agreed to pay six thousand dollars for the farm and had no intention of performing the promise, and plaintiff relied thereon, whereby defendant fraudulently procured the delivery of the deed, the rule in *Davis v. Alford* ... would be applicable." 130 W.Va. at 524, 44 S.E.2d at 590. Stating the law on fraudulent promises, we held in syllabus point one of *Dyke:*

Generally a promise to be performed in the future, and subsequent breach thereof, are not sufficient bases on which to predicate fraud. But an exception to that rule exists where a deed is fraudulently procured by means of a promise which the promisor, at the time of making the same, did not intend to keep, and such promise is the device by which a fraud is perpetrated,

---

13. The property was subject to sale as the plaintiff and his business partner were in default of payment.

14. The plaintiff and his business partner had a falling out and the plaintiff was seeking to become the sole owner of the property.

the deed so procured may be rescinded at the suit of the person defrauded.

130 W.Va. at 519, 44 S.E.2d at 588.

■ Traders Bank argues that *Davis* and *Dyke* are inapposite as neither case involved a written document like the promissory note which reflected the terms of the agreement. We find this argument to be unavailing. The critical element of a fraudulent inducement claim is an oral promise that is used as an improper enticement to the consummation of another agreement. The fact that the agreement is reduced to writing, as it was in this case, does not negate the occurrence of a precedent oral promise that was the motivating factor for the making of such agreement. *See Cardinal State Bank v. Crook*, 184 W.Va. 152, 157, 399 S.E.2d 863, 868 (1990) (reversing and remanding to permit jury to hear evidence that defendant bank fraudulently induced plaintiff borrowers to sign note that did not reflect terms of agreement); *see also White v. National Steel Corp.*, 938 F.2d 474, 490 (4th Cir.1991) (recognizing that successful claim of fraudulent inducement of written employment contract required evidence that employer represented to plaintiffs "that they had the unilateral right to return to their former positions when, in fact, National [employer] *at that time* reserved that power for itself"); *Bluestone Coal Corp. v. CNX Land Resources, Inc.*, 2007 WL 6641647, at *6 (S.D.W.Va.2007) (discussing elements of fraudulent inducement as requiring proof of alleged fraudulent promise that preceded creation of written contract).

In similar fashion, we do not find the integration clause [15] that is purportedly contained in the promissory note [16] to exclude the possibility of a fraudulent inducement claim. *See Center State Farms v. Campbell Soup Co.*, 58 F.3d 1030, 1033 (4th Cir.1995) (holding that integration clauses of individual contracts between parties did not preclude evidence of parties' overarching oral agreement). Traders Bank argues that Sherman Dils, a sophisticated business person, would not have entered into an agreement for more than a million dollars without ensuring that all of the terms of the agreement were reduced to writing.[17] That argument is certainly one that Traders Bank may use to try to convince a jury, if this case proceeds that far, that the fraudulent inducement claim lacks merit. It does not, however, resolve the issue of whether Traders Bank, through its agents, made representations along the lines represented by Sherman Dils in his counterclaim and supporting affidavit.

■ In the same way that fraud is recognized as an exception to the parole evidence rule,[18] fraud is similarly recognized to be an exception to the contractual language typically found in an integration or merger clause which seeks to limit one party's liability to the other. *See Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 630 (4th Cir.1999) (recognizing that "buyer can show that a contract of sale was induced by the seller's fraud, even though the written contract contains covenants waiving warranties or disclaiming or limiting liabilities") *see also Rubberlite, Inc. v. Baychar Holdings, LLC*, 737 F.Supp.2d 575, 582–83 (S.D.W.Va.2010)

**15.** Traders Bank represents that the promissory note includes an integration or merger clause which provides that "[t]his Note represents the complete and integrated understanding between Borrower and Lender regarding the terms hereof."

**16.** While Traders Bank referenced the promissory note as an exhibit included in the record as an attachment to the Memorandum in Support of Trader Bank's Motion to Dismiss and Motion for Summary Judgment, no exhibits were attached to that motion in the record submitted to this Court.

**17.** The counter argument that Sherman Dils raises is that he would never have agreed to execute the subject promissory note without the oral promise by Traders Bank that the Floor Plan would be fully restored as he claims that he could have obtained comparable financing elsewhere.

**18.** *See Cardinal State Bank*, 184 W.Va. at 156, 399 S.E.2d at 867 (stating that "[f]raud, together with a showing of illegality, duress, mistake, or insufficiency of consideration are among the well recognized exceptions to the parol evidence rule"); Syl. Pt. 3, in part, *Iafolla v. Douglas Pocahontas Coal Corp.*, 162 W.Va. 489, 250 S.E.2d 128 (1978) (recognizing that "in the absence of fraud, mistake, or material misrepresentations extrinsic evidence cannot be used to alter or interpret language in a written contract").

(predicting that under West Virginia law neither parol evidence rule nor integration clause in license agreement barred claim alleging negligent misrepresentations and omissions); *In re Marine Energy Sys. Corp.*, 299 Fed.Appx. 222, 229 n. 1, 2008 WL 4820128 (4th Cir.2008) (recognizing that neither the parol evidence rule nor the merger or integration clause in the parties' contract prevents party from proceeding on tort theories of negligent misrepresentation and fraud).

As additional support for its position that the Respondents have no standing to assert fraudulent inducement as either a defense or a counterclaim, Traders Bank focuses on the fact that the Dealership, rather than the Respondents, was the beneficiary of the oral promise allegedly made to induce Sherman Dils to sign the promissory note. Consequently, Traders Bank maintains that if anyone has standing to seek damages from a breach of the alleged oral promise used to induce execution of the promissory note, it would be the Dealership and not Sherman Dils.

In issuing its decision on the motion to dismiss and motion for summary judgment filed by Traders Bank, the trial court correctly ruled "that the substance of the allegedly-fraudulent promise is irrelevant to the Dils' fraud claim." As we made clear in *Davis*, the breach which was the fulcrum of that particular fraudulent inducement claim was not the defendant's failure to convey the subject real estate but instead the false promise that plaintiff acted upon to his detriment. 113 W.Va. at 33, 166 S.E. at 702; *accord SOFCO, LLC v. National Bank of*

*Kansas City*, 2009 WL 3053746, at \*20 (D.Kan.2009) ("[T]he gravamen of … a [fraudulent inducement] claim is not the breach of the agreement to perform, but the fraudulent representation concerning a present, existing intention to perform when such intention is in fact nonexistent.") (internal quotation omitted).

■ In this case, Sherman Dils alleges that he relied upon the promise of Traders Bank to fully activate the Floor Plan as the basis for his agreement to execute the promissory note. And because the Floor Plan was not fully reactivated, which Traders Bank knew was not going to occur [19] at the time of the oral promise, Sherman Dils has incurred monetary damages as a result of having to sell parcels of real estate that he pledged as security for the note. Through his counterclaim, Sherman Dils is seeking damages that he personally incurred as a result of the alleged breach of the fraudulent inducement. Those damages could not be claimed by the Dealership as the Dealership was not a party to the promissory note. The trial court correctly reasoned that "[i]f the promise is held to be fraudulent, the Dils are the injured party and have a remedy for the loss sustained by an action for damages." [20]

■ Based on the foregoing we hold that the maker of a promissory note has standing to assert a tort claim of fraud in the inducement as a defense and/or a counterclaim in response to the lender's attempt to recover a debt on the promissory note where the maker can demonstrate reliance to his financial detriment upon the oral promise of the lender, which the lender had no contemporaneous

---

19. We recognize that Respondents have plead that Traders Bank "knew or should have known" that a full reactivation of the Floor Plan was not going to happen at the time the oral promise was made. Because a claim of fraudulent inducement requires a contemporaneous intent not to fulfill the subject promise, the "should have known" language is clearly inapplicable. Syl. Pt. 1, *Alleman*, 130 W.Va. at 519, 44 S.E.2d at 588. The elements necessary to prove fraud are distinct from those used to establish negligence. *See* Syl. Pt. 1, *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981).

20. Traders Bank argued strenuously that Respondents have improperly sought to transform a

garden variety contractual claim into a fraud-based claim. *See White*, 938 F.2d at 490 (observing that "[w]e must be careful to distinguish between actual fraud and artfully pleaded breach of contract claims"). While we are not unmindful of the possibility that Respondents will be unable to meet the "unquestionably heavy" burden of proof to demonstrate fraud, this case is presented to us solely on the grounds of whether such a claim of fraudulent inducement may be raised under the facts of this case. *Tri-State Asphalt Products, Inc. v. McDonough Co.*, 182 W.Va. 757, 762, 391 S.E.2d 907, 912 (1990) (internal quotation omitted).

intention of fulfilling, and notwithstanding the fact that a third party was the beneficiary of the oral promise.

Having answered the certified answer as reformulated we remand this matter to the Circuit Court of Roane County for further proceedings consistent with this opinion.

Certified Question Answered.