IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

**FILED**
**June 11, 2021**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Nos. 20-0694 and 20-0751

STATE OF WEST VIRGINIA EX REL.
AMERISOURCEBERGEN DRUG CORPORATION, ET AL.,
Petitioners

v.

THE HONORABLE ALAN D. MOATS, LEAD PRESIDING JUDGE,
OPIOID LITIGATION, MASS LITIGATION PANEL, ET AL.,
Respondents

AND

STATE OF WEST VIRGINIA EX REL.
JOHNSON & JOHNSON, ET AL.,
Petitioners

v.

THE HONORABLE ALAN D. MOATS, LEAD PRESIDING JUDGE,
OPIOID LITIGATION, MASS LITIGATION PANEL, ET AL.,
Respondents

ORIGINAL PROCEEDING IN PROHIBITION
PETITION FOR PROHIBITION NO. 20-0751 DENIED
PETITION FOR PROHIBITION NO. 20-0694 DENIED IN PART AND
GRANTED IN PART

Submitted:  February 17, 2021
Filed:  June 11, 2021

Albert F. Sebok, Esq.
Gretchen M. Callas, Esq.
Candice M. Harlow, Esq.
Charleston, West Virginia
JACKSON KELLY PLLC
Todd A. Mount, Esq.
SHAFFER & SHAFFER, PLLC
Madison, West Virginia
Counsel for Petitioner
AmerisourceBergen
Drug Corporation

Michael W. Carey, Esq.
Steven R. Ruby, Esq.
Raymond S. Franks II, Esq.
David R. Pogue, Esq.
CAREY DOUGLAS KESSLER &
RUBY PLLC
Charleston, West Virginia
Counsel for Petitioner Cardinal
Health, Inc.

Webster J. Arceneaux III, Esq.
LEWIS GLASSER, PLLC
Charleston, West Virginia
Counsel for Petitioners Rite Aid of
West Virginia, Inc. and Rite Aid of
Maryland, Inc. d/b/a Rite Aid Mid-
Atlantic Customer Support Center

Erik W. Legg, Esq.
FARRELL, WHITE & LEGG PLLC
Huntington, West Virginia
Counsel for Petitioners Endo
Pharmaceuticals Inc.; Endo Health
Solutions Inc.; Par Pharmaceutical

Lindsay S. See, Esq.
Solicitor General
Ann L. Haight, Esq.
Deputy Attorney General
Vaughn T. Sizemore, Esq.
Deputy Attorney General
Abby G. Cunningham, Esq.
Assistant Attorney General
Charleston, West Virginia
Linda Singer, Esq.
Elizabeth Smith, Esq.
Motley Rice LLC
Charles R. "Rusty" Webb
The Webb Law Centre, PLLC
Charleston, West Virginia
Counsel for Respondent State of West
Virginia ex rel. Patrick Morrisey,
Attorney General

Anthony Majestro, Esq.
Powell & Majestro, PLLC
Charleston, West Virginia
Paul T. Farrell, Jr., Esq.
Farrell Law
Huntington, West Virginia
Robert P. Fitzsimmons, Esq.
Clayton J. Fitzsimmons, Esq.
Mark A. Colantonio, Esq.
FITZSIMMONS LAW FIRM PLLC
Wheeling, West Virginia
Letitia N. Chafin, Esq.
THE CHAFIN LAW FIRM, PLLC
Williamson, West Virginia
Kevin C. Harris, Esq.
Eric J. Holmes, Esq.

Companies, Inc.; Par Pharmaceutical Inc.

Keith A. Jones, Esq.
JONES LAW GROUP, PLLC
Charleston, West Virginia
Steven A. Luxton, Esq.
MORGAN, LEWIS & BOCKIUS LLP
Washington, DC
Counsel for Petitioners Watson Laboratories, Inc.; Warner Chilcott

Company, LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Actavis South Atlantic LLC; Actavis Kadian LLC; Actavis Laboratories UT, Inc.; Actavis Laboratories FL, Inc. f/k/a Watson Laboratories, Inc.-Florida; Teva Pharmaceuticals USA, Inc.; and Cephalon, Inc.

Michael B. Hissam, Esq.
J. Zak Ritchie, Esq.
HISSAM FORMAN DONOVAN RITCHIE PLLC
Charleston, West Virginia
Counsel for Petitioner Mylan Pharmaceuticals Inc.

Ronda L. Harvey, Esq.
Fazal A. Shere, Esq.
Marc F. Mignault, Esq.
Gabriele Wohl, Esq.
BOWLES RICE LLP
Charleston, West Virginia
Counsel for Petitioners The Kroger Co., Kroger Limited Partnership I, and Kroger Limited Partnership II

Jon B. Orndorff, Esq.
Kelly Calder Mowen, Esq.

LAW OFFICES OF HARRIS & HOLMES, PLLC
Ripley, West Virginia
Anne McGinness Kearse, Esq.
Natalie Deyneka, Esq.
MOTLEY RICE LLC
Mount Pleasant, South Carolina
Counsel for Respondent Counties and Municipalities

Stephen B. Farmer, Esq.
FARMER, CLINE & CAMPBELL, PLLC
Charleston, West Virginia
Timothy R. Linkous, Esq.
LINKOUS LAW, PLLC
Morgantown, West Virginia
Counsel for Respondent Hospitals

LITCHFIELD CAVO, LLP
Barboursville, West Virginia
Counsel for Petitioner Noramco, Inc.

Keith A. Jones, Esq.
JONES LAW GROUP, PLLC
Charleston, West Virginia
Counsel for Petitioner Anda, Inc.

Rita Massie Biser, Esq.
Moore & Biser PLLC
South Charleston, West Virginia
Counsel for Petitioner Henry Schein,
Inc.

Neva G. Lusk, Esq.
Tai Shadrick Kluemper, Esq.
SPILMAN THOMAS & BATTLE,
PLLC
Charleston, West Virginia
Elbert Lin, Esq.
HUNTON ANDREWS KURTH LLP
Richmond, Virginia
Counsel for Petitioner Walmart Inc.
and Wal-Mart Stores East, LP

Bryant J. Spann, Esq.
Robert H.  Akers, Esq.
THOMAS COMBS & SPANN,
PLLC
Charleston, West Virginia
Counsel for Petitioners Walgreen Co.
and Walgreens Boots Alliance, Inc.

Carte P. Goodwin, Esq.
Joseph M. Ward, Esq.
Alex J. Zurbuch, Esq.
FROST BROWN TODD LLC
Charleston, West Virginia
Counsel for Petitioners CVS Indiana
L.L.C.; CVS Rx Services, Inc.; CVS
TN Distribution, L.L.C.; CVS

Pharmacy, Inc.; and West Virginia
CVS Pharmacy, L.L.C.

Christopher D. Pence, Esq.
Wm. Scott Wickline, Esq.
Hardy Pence PLLC
Charleston, West Virginia
Sarah M. Benoit, Esq.
ULMER & BERNE LLP
Columbus, Ohio
Counsel for Petitioners Amneal
Pharmaceuticals LLC; Amneal
Pharmaceuticals of New York, LLC;
and Impax Laboratories, LLC

Stephen D. Annand, Esq.
Keith J. George, Esq.
Marisa R. Brunetti, Esq.
ROBINSON & MCELWEE, PLLC
Charleston, West Virginia
Counsel for Petitioners Mallinckrodt
LLC; Mallinckrodt Brand
Pharmaceuticals, Inc.; Mallinckrodt
Enterprises LLC; and SpecGX LLC

Marc E. Williams, Esq.
Robert L. Massie, Esq.
Jennifer W. Winkler, Esq.
NELSON MULLINS RILEY &
SCARBOROUGH LLP
Huntington, West Virginia
Counsel for Petitioners Janssen
Pharmaceuticals, Inc.; Ortho-McNeil-
Janssen Pharmaceuticals, Inc. n/k/a
Janssen Pharmaceuticals, Inc.;
Janssen Pharmaceutica, Inc. n/k/a
Janssen Pharmaceuticals, Inc.; and
Johnson & Johnson

William R. Slicer, Esq.
Shuman McCuskey Slicer PLLC
Charleston, West Virginia

Counsel for Petitioners Abbott
Laboratories and Abbott Laboratories,
Inc.

John H. Mahoney II, Esq.
DINSMORE & SHOHL LLP
Huntington, West Virginia
Counsel for Petitioner Fruth
Pharmacy, Inc.

Todd A Mount, Esq.
SHAFFER & SHAFFER, PLLC
Madison, West Virginia
Counsel for Petitioner H.D. Smith
LLC f/k/a H.D. Smith Wholesale
Drug Company

Tim J. Yianne, Esq.
Patricia M. Bello, Esq.
LEWIS BRISBOIS BISGAARD &
SMITH LLP
Charleston, West Virginia
Counsel for Petitioners Allergan
Finance, LLC f/k/a Actavis, Inc. f/k/a
Watson Pharmaceuticals, Inc.;
Allergan Sales, LLC; Allergan USA,
Inc.; and Warner Chilcott Sales (US),
LLC

JUSTICE WALKER delivered the Opinion of the Court.

CHIEF JUSTICE JENKINS and JUSTICE ARMSTEAD dissent in No. 20-0751, concur in part and dissent in part in No. 20-0694, and reserve the right to file separate opinions.

JUSTICE HUTCHISON concurs in Nos. 20-0751 and 20-0694 and reserves the right to file a separate opinion.

JUSTICE WOOTON concurs in No. 20-0751, concurs in part and dissents in part in No. 20-0694, and reserves the right to file a separate opinion.

**SYLLABUS BY THE COURT**

1. "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W. Va. Code* 53-1-1." Syllabus Point 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

2. "A trial court exceeds its legitimate powers when it denies a jury trial to one entitled thereto who makes a proper demand therefor." Syllabus Point 2, *State ex rel. W. Va. Truck Stops, Inc. v. McHugh*, 160 W. Va. 294, 233 S.E.2d 729 (1977).

3. "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law,

i

should be given substantial weight." Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199

W. Va. 12, 483 S.E.2d 12 (1996).

WALKER, Justice:

Beginning in 2017, various cities, counties, hospitals, and the State of West Virginia sued manufacturers and distributors of prescription opioid pain medication and other defendants. This Opioid Litigation is now more than eighty lawsuits pending before the Mass Litigation Panel. In the consolidated petitions before us, Petitioners are defendants in the Opioid Litigation who ask this Court for extraordinary relief prohibiting enforcement of the Panel's recent rulings that (1) Petitioners do not have a right to a jury trial of Respondents' public nuisance claims (liability only); and (2) those same public nuisance claims are not subject to the 2015 amendments to West Virginia's comparative fault statute. Respondents, who are plaintiffs in the Opioid Litigation, urge us not to disturb these rulings by the Panel. For the reasons discussed below, we grant in part and deny in part Petition No. 20-0694 and deny Petition No. 20-0751. We conclude that the Panel did not clearly err when it found that the 2015 amendments do not apply to the public nuisance claims. But, we also find that the Panel did clearly err by not safeguarding Petitioners' right to try issues common to Respondents' public nuisance claims and their legal claims to a jury.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In June 2019, this Court referred five cases filed by West Virginia county commissions against manufacturers and distributors of prescription opioid pain medication and other defendants to the Panel, pursuant to Rule 26.06(c)(3) of the West Virginia Trial

Court Rules (the Opioid Litigation).[1] The Panel consists of seven active or senior status circuit court judges, appointed by the Chief Justice with the approval of this Court. Its function is to efficiently manage and resolve mass litigation, like the Opioid Litigation, which now includes more than eighty lawsuits brought by the State of West Virginia, counties, municipalities, and hospitals against several categories of defendants and in various combinations.

All Petitioners are defendants in the Opioid Litigation. All Respondents are plaintiffs in the Opioid Litigation. For the sake of clarity, we refer to Petitioners, collectively as "Defendants," and Respondents, collectively, as "Plaintiffs." Where a particular issue pertains only to the State, or does not pertain to the State, we say so.

During a status conference on December 6, 2019, the Panel proposed that the parties consider resolving all public nuisance claims (liability only) in a non-jury trial, to be conducted before trying remedies for the nuisance claims or any other claims. The Panel acknowledged that *Camden-Clark Memorial Hospital Corp. v. Turner*[2] (*Camden-Clark*)

---

[1] *See* W. Va. Trial Court Rule 26.06(c)(3) ("The Chief Justice, whether acting directly upon the motion or upon the recommendation of the Panel member or members, shall enter an order either granting or denying the motion, or providing modified relief. The order shall be filed with the Clerk of the Supreme Court of Appeals who shall send a copy of the order to the Panel Chair and to the clerk(s) of the circuit court(s) where the actions are pending for service on all parties."). This Court also ordered that all then-pending, later-filed, and later-remanded cases involving the same or similar common questions of law or fact be joined before the Panel. That order resulted in the Opioid Litigation, from which the petitions before the Court arise.

[2] 212 W. Va. 752, 575 S.E.2d 362 (2002).

may limit its ability to try an equitable claim before allowing a jury to decide related, legal

claims. Specifically, the Panel stated:

> Injunctions regularly are decided by courts. It is an equitable type remedy ordinarily that wouldn't be entitled to a jury trial. It would be decided by the court.

> The [c]ourt would determine what the proper abatement is. [The Federal District Court for the Northern District of Ohio] is dealing with that. He took the position, as I understand it, that there is no absolute right to a jury trial, but he decided to give them one.

> Well, we haven't decided that. We have a case, [*Camden-Clark*], that says where there are legal issues coupled with injunctive - - a request for injunctive relief, the legal issue, if it is to be tried by a jury, it is to go first.

> ***

> Now right now the question is well, are our hands tied under [*Camden-Clark*]?

> ***

> Then we will finish the matter when that is complete and set the rest of it aside for the time being or you can rely on [*Camden-Clark*] and say, no, I am not going to do it, that this is going to be a war to the bitter end.

Still, the Panel encouraged the parties to consider a Phase I Trial.[3] In later filings, Plaintiffs

expressed support for a Phase I Trial, while Defendants rejected the proposal.[4]

---

[3] The State was not then a part of the Opioid Litigation. The Panel permitted it to join the mass litigation on February 19, 2020.

[4] Plaintiffs represent that McKesson Corp. has stipulated to a non-jury trial of the public nuisance claims against it. According to briefing before the Panel, this came about after certain Plaintiffs agreed to limit their claims to public nuisance in exchange for

On February 19, 2020, the Panel issued an order, applicable to all cases, formalizing its earlier proposal and ordering the Phase I Trial. The Panel reasoned that West Virginia Rule of Civil Procedure 39(a) empowered it to act on its own initiative to find that a right to a jury trial did not exist as to a particular issue, so that it could order a non-jury trial of Plaintiffs' public nuisance claims (liability only) over Defendants' objections.[5] The Panel concluded that the public nuisance claims sounded in equity, and not law, so article III, § 13 of the West Virginia Constitution—guaranteeing a right to a jury trial in suits at "common law"[6]—did not preclude the Phase I Trial. Finally, the Panel

McKesson Corp.'s consent to a bench trial. In addition, in "All Plaintiffs' Consolidated Memorandum of Law In Opposition to Certain Defendants' (1) Motion for Clarification or Reconsideration of Order Regarding Trial Liability for Public Nuisance; (2) Motion for Clarification or Reconsideration of Orders Regarding Public Nuisance Trial Plan; (3) Motion for Dismissal of County and Municipal Plaintiffs' Public Nuisance Claims for Lack of Standing; and (4) Motion for Dismissal of the Hospital Plaintiffs' Public Nuisance Claims for Lack of Standing," Plaintiffs stated that they "remain[ed] willing to enter into [such a] stipulation with all Defendants."

[5] W. Va. R. Civ. P. 39(a) ("When trial by jury has been demanded as provided in Rule 38 or a timely motion or request therefor has been made under subdivision (b) of this rule, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded or requested shall be by jury, unless (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury or (2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the State.").

[6] W. Va. CONST. art. III, § 13 ("In suits at common law, where the value in controversy exceeds twenty dollars exclusive of interest and costs, the right of trial by jury, if required by either party, shall be preserved; and in such suit in a court of limited jurisdiction a jury shall consist of six persons. No fact tried by a jury shall be otherwise reexamined in any case than according to rule of court or law.").

The right to a jury trial in federal courts, guaranteed by the Seventh Amendment, has not been extended to states through the Fourteenth Amendment. *See Bostic v. Mallard*

distinguished *Camden-Clark*, which it had previously recognized as a potential bar to the Phase I Trial, as an employment law case that did not outweigh "'the national public health emergency . . . in West Virginia [posed by] opioid and drug addiction.'"[7]

In March 2020, certain Defendants filed a motion, applicable to all cases, urging the Panel to reconsider its February 19, 2020, order.[8] Defendants argued that the Panel could not conduct the Phase I Trial without violating their right to try Plaintiffs' other, legal claims to a jury.[9] Citing this Court's decision in *West Virginia Human Rights Commission v. Tenpin Lounge, Inc.*,[10] along with similar, federal authority,[11] those Defendants asserted that the Panel had to permit a jury to decide all issues common to Plaintiffs' equitable and legal claims before conducting the Phase I Trial; otherwise, the

---

*Coach Co., Inc.*, 185 W. Va. 294, 301, 406 S.E.2d 725, 732 (1991). "However, the interpretation of that amendment by the U.S. Supreme Court can certainly inform our understanding of our similar state jury trial guarantee." *Bishop Coal Co. v. Salyers*, 181 W. Va. 71, 76–77, 380 S.E.2d 238, 243–44 (1989).

[7] Page 7 of the Panel's order of February 19, 2020 (quoting *Gov. Justice Issues Statement on President Trump's Declaration of National Public Health Emergency* OFFICE OF THE GOVERNOR JIM JUSTICE (Aug. 11, 2017) available at https://governor.wv.gov/News/press-releases/2017/Pages/Gov.-Justice-Issues-Statement-on-President-Trump's-Declaration-of-National-Public-Health-Emergency.aspx (last visited March 3, 2021)).

[8] The title page of the Motion for Reconsideration states that it applies to all cases.

[9] Defendants did not concede that Plaintiffs' public nuisance claims were equitable.

[10] 158 W. Va. 349, 211 S.E.2d 349 (1975).

[11] *See, e.g.*, *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959).

5

Panel would deprive Defendants of their right to try those issues to a jury. These Defendants also argued that because Plaintiffs sought money to abate the alleged public nuisance, the public nuisance claims are legal claims that must be tried to a jury.[12] In May 2020, certain Defendants filed a "Supplemental Brief and Motion for Clarification or Reconsideration of Orders Regarding Public Nuisance Trial Plan," applicable to all cases, and renewed their arguments that the Phase I Trial violated their right to a jury trial.[13]

Meanwhile, certain Defendants filed notices of nonparty fault under the 2015 Act.[14] In June 2020, Plaintiffs—excluding the State—moved to strike the notices of

---

[12] Defendants also argued that the monetary relief sought by Plaintiffs could not be deemed "incidental" to any equitable relief, as this Court's precedent, *McMechen, et al. v. Hitchman-Glendale Consolidated Coal Co. et al.*, 88 W. Va. 633, 107 S.E. 480 (1921), conflicted with more recent decisions of this Court and the Supreme Court of the United States. Defendants also distinguished proceedings in the Federal District Court of the Southern District of West Virginia, in which three distributors had agreed to a bench trial, and disputed Plaintiffs' ability to secure a prospective remedy insofar as they alleged a temporary and continuing public nuisance.

[13] Defendants also challenged the Phase I Trial on due process grounds, disputed the practicality of conducting a single trial of all public nuisance claims (liability only), advocated for a "bellwether" trial of the City of Clarksburg and Harrison County's claims and appropriate discovery, and contested the Panel's ability to bifurcate the liability for public nuisance from causation. Those issues are not now before the Court.

[14] *See* W. Va. Code § 55-7-13d(a)(2) (2015) ("Fault of a nonparty shall be considered if the plaintiff entered into a settlement agreement with the nonparty or if a defending party gives notice no later than one hundred-eighty days after service of process upon said defendant that a nonparty was wholly or partially at fault. Notice shall be filed with the court and served upon all parties to the action designating the nonparty and setting forth the nonparty's name and last-known address, or the best identification of the nonparty which is possible under the circumstances, together with a brief statement of the basis for believing such nonparty to be at fault . . . .").

nonparty fault.[15] Plaintiffs argued that the 2015 Act did not apply to their public nuisance claims because those claims accrued before the 2015 Act took effect. And, even if the public nuisance claims accrued after the Act's effective date, they argued that it would still not apply to the public nuisance claims because those claims are equitable and do not seek damages—a prerequisite to the 2015 Act's application. For the same reason, they argued that a predecessor to the 2015 Act did not apply to their public nuisance claims, either. Defendants responded that Plaintiffs' claim accrual argument was a "judicial admission that their nuisance claims are time-barred." Defendants also argued that the public nuisance claims sought damages, and not equitable relief, so the 2015 Act applied to those claims.

Also in June 2020, Defendants in the State's case filed notices of nonparty fault. The next month, the State moved to strike those notices. The State argued that the notices did not identify the nonparties alleged to be at fault with the specificity required by the 2015 Act. The State also argued that the 2015 Act did not apply to its claims seeking abatement of public nuisance and for equitable relief and civil penalties for alleged

---

The notice filed by AmerisourceBergen Drug Corporation, for example, identified categories of nonparties that it contended were wholly or partially at fault for the harm alleged by Plaintiffs or any recovery in the case. These categories are, among others, nonparty pharmacies, nonparty pharmacists, nonparty prescribing practitioners, nonparty individuals involved in illegal drug sales, and nonparty pharmaceutical manufacturers.

[15] When the motion was filed, no party that had been sued by the State had filed a notice of nonparty fault. The State, however, supported the motion to strike.

violations of the West Virginia Consumer Credit and Protection Act (WVCCPA).[16] Finally, the State argued that its public nuisance claim had accrued before the effective date of the 2015 Act. Defendants in that case responded that the State's claim accrual argument amounted to an admission that its public nuisance claim was time-barred and that the State sought damages for its public nuisance and WVCCPA claims, meaning that the 2015 Act applied and that they could pursue a theory of nonparty fault.

On July 23, 2020, the Panel denied certain Defendants' pending (1) motion for reconsideration and (2) motion for clarification or reconsideration of the Panel's orders regarding the Phase I Trial. The Panel emphasized its broad authority to adopt procedures to fairly and efficiently manage and resolve matters, such as the Opioid Litigation, and rejected Defendants' proposal to conduct a bellwether trial of one city's and one county's public nuisance claims (liability and remedies). A state-wide trial, the Panel explained, was conducted in the Tobacco and Asbestos Litigations and had worked. The Panel found Defendants' bifurcation argument equally unpersuasive and clearly communicated its commitment to a non-jury trial of the public nuisance claims (liability only), as those claims and the abatement remedy were equitable, so that Defendants had no right to try them to a jury.[17] Finally, the Panel found that its trial plan provided for sufficient discovery.

---

[16] W. Va. Code § 46A-1-101, et seq.

[17] The Panel also ruled that the Phase I Trial (nuisance liability) would include the determination of causation. The Panel observed that both Plaintiffs and Defendants contended that causation should be part of the Phase I Trial (nuisance liability).

8

The Panel granted Plaintiffs' (excluding the State) motion to strike Defendants' notices of nonparty fault on July 29, 2020. The Panel recounted its February order regarding the non-jury trial of Plaintiffs' public nuisance claims (liability only) and reiterated its determination that those public nuisance claims are equitable. The Panel distinguished the equitable remedy of abatement from the damages remedy to which the 2015 Act applies.[18] The Panel recognized Defendants' argument that abatement is traditionally accomplished by injunctive relief—not payment of money—but found that its powers to fashion equitable relief are broad, and that nothing precludes it from ordering Defendants to pay the costs associated with abating the alleged public nuisance (assuming any Defendants are found liable). Because the Panel decided the question based on its determination that the public nuisance claims are equitable, it did not reach Plaintiffs' claim accrual argument and Defendants' responsive, statute of limitations argument. The Panel then entered an order on August 4, 2020, incorporating its July 29, 2020, order, and granting the State's motion to strike notices of nonparty fault as to its public nuisance and WVCCPA claims.

These petitions followed. In Petition No. 20-0694, Defendants challenge the Panel's February 19, 2020, and July 23, 2020, orders (relating to jury trial of the public nuisance claims); and July 29, 2020 order (relating to applicability of 2015 Act to cities',

---

[18] *See* W. Va. Code § 55-7-13c(a) (stating that "[i]n any action for compensatory damages, the liability of each defendant for compensatory damages shall be several only and may not be joint").

9

counties', and hospitals' public nuisance claims). In Petition No. 20-0751, Johnson & Johnson and additional defendants—sued by the State—challenge the Panel's August 4, 2020, order relating to applicability of the 2015 Act to the State's public nuisance claim.[19] Pursuant to the Rule to Show Cause, entered December 3, 2020, the petitions were consolidated for purposes of oral argument, consideration, and decision.

## II. STANDARD OF REVIEW

"This Court is restrictive in the use of prohibition as a remedy."[20] "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1."[21] "[E]xtraordinary remedies are reserved for 'really extraordinary causes,'"[22] and not "as a substitute for an appeal."[23] "[P]rohibition may be invoked when it clearly appears that the trial court is without jurisdiction or has

---

[19] Petitioners in Petition No. 20-0751 do not challenge that portion of the August 4, 2020, order in which the Panel found that the State's WVCCPA claim was not subject to the 2015 Act.

[20] *State ex rel. W. Va. Fire & Cas. Co. v. Karl*, 199 W. Va. 678, 683, 487 S.E.2d 336, 341 (1997).

[21] Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

[22] *State ex rel. Vanderra Res., LLC v. Hummel*, 242 W. Va. 35, 40, 829 S.E.2d 35, 40 (2019) (quoting *Am. El. Power Co. v. Nibert*, 237 W. Va. 14, 19, 784 S.E.2d 713, 718 (2016)).

[23] *State ex rel. Owners Ins. Co. v. McGraw*, 233 W. Va. 776, 780, 760 S.E.2d 590, 594 (2014).

exceeded its legitimate powers"[24]—for example, "when [the trial court] denies a jury trial to one entitled thereto who makes a proper demand therefor."[25]

In cases that do not involve an allegation that the lower court has acted without jurisdiction, we consider five factors to determine whether to issue the discretionary writ of prohibition. These factors are:

> (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.[26]

---

[24] Syl. Pt. 10, in part, *State ex rel. Lynn v. Eddy*, 152 W. Va. 345, 163 S.E.2d 472 (1968).

[25] Syl. Pt. 2, in part, *State ex rel. W. Va. Truck Stops, Inc. v. McHugh*, 160 W. Va. 294, 233 S.E.2d 729 (1977). *See* Louis J. Palmer, Jr. & Robin Jean Davis, LITIGATION HANDBOOK ON WEST VIRGINIA RULES OF CIVIL PROCEDURE 1044 (2017) ("A denial of a jury demand as a matter of right may be challenged through a writ of mandamus.").

[26] Syl. Pt. 4, in part, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

It bears repeating that those "factors are general guidelines that serve as a useful starting point for determining whether a *discretionary* writ of prohibition should issue."[27]

## III. ANALYSIS

Defendants contend that the Panel committed several clear errors of law that mandate this Court's intervention by extraordinary writ. Defendants argue that the Panel misapplied state and federal law to find that Plaintiffs' public nuisance claims are "equitable," rather than "legal." Similarly, they assert that the Panel fundamentally misunderstood the nature of the abatement remedy claimed by Plaintiffs. It is not, they argue, an equitable remedy; it is a claim for damages. According to Defendants, those clear legal errors have impacted the Opioid Litigation in two ways. First, they claim that the errors resulted in the erroneous denial of Defendants' right to try Plaintiffs' public nuisance claims (liability only) to a jury. And, second, Defendants contend that the errors led to the Panel's erroneous conclusion that the 2015 Act does not apply to Plaintiffs' public nuisance claims and alleged abatement remedy. Additionally, and alternatively, Defendants argue that the Panel clearly erred when it found that the Phase I Trial would not deprive Defendants of their right to try Plaintiffs' other, legal claims to a jury. We address Defendants' arguments regarding the nature of Plaintiffs' public nuisance claims and alleged remedy, before turning to Defendants' alternative argument.

---

[27] Syl. Pt. 4, in part, *id.* (emphasis added).

## A. Nature of the Public Nuisance Claims and Abatement Remedy

The nature of Plaintiffs' public nuisance claims and abatement remedy matters for two reasons: Defendants' right to try those claims (liability only) to a jury and the applicability of the 2015 Act to the claims. We outline each of those contexts before addressing Defendants' arguments.

"Prior to the introduction of the Rules of Civil Procedure, a right to a jury trial existed in an action at law. In an equitable dispute, however, the right to a jury trial did not exist."[28] Law and equity merged in 1960,[29] but that merger "did *not* extend the right of jury trial to civil cases that, before the merger, would have been in equity,"[30] and the legal-equitable distinction still matters for purposes of the jury trial right. "In determining whether an action is legal or equitable in nature, both the issues involved and the remedy sought are examined,"[31] but we give greater weight to the remedy sought.[32] In

---

[28] *Little v. Little*, 184 W. Va. 360, 362, 400 S.E.2d 604, 606 (1990).

[29] *See* W. Va. R. Civ. P. 2 ("There shall be one form of action to be known as 'civil action'.") (Eff. July 1, 1960; amended eff. Apr. 6, 1998).

[30] *E. Shepherdstown Dev., Inc. v. J. Russell Fritts, Inc.*, 183 W. Va. 691, 695, 398 S.E.2d 517, 521 (1990) (citing Syl. Pt. 1, *Tenpin Lounge*, 158 W. Va. at 349, 211 S.E.2d at 349) (emphasis in original).

[31] *Realmark Dev., Inc. v. Ranson*, 214 W. Va. 161, 164, 588 S.E.2d 150, 153 (2003).

[32] *See Bishop Coal Co.*, 181 W. Va. at 77, 380 S.E.2d at 244 ("The test most often applied by the Supreme Court under its expansive reading of the seventh amendment is whether the relief sought is essentially legal (e.g. money damages) or equitable (e.g. injunctive relief).").

13

short, the right to a jury trial "applies where the legal remedy of damages is full and adequate and can do complete justice between the parties."[33]

As for the 2015 Act, it provides that "[i]n any action for damages, the liability of each defendant for compensatory damages[34] shall be several only and may not be joint."[35] Under § 55-7-13c(a), a defendant may "be liable only for the amount of compensatory damages allocated to that defendant in direct proportion to that defendant's percentage of fault[.]"[36] The Legislature has provided that when "assessing percentages of fault, the trier of fact shall consider the fault of all persons who contributed to the alleged damages," including nonparties.[37] Under West Virginia Code § 55-7-13d(a)(2) and (3), when a defendant has properly raised the question of nonparty fault, and the jury assesses a percentage of fault to that nonparty, "any recovery by a plaintiff shall be reduced in proportion to the percentage of fault chargeable to such nonparty."[38] So, whether

---

[33] *Realmark Dev.*, 214 W. Va. at 164, 588 S.E.2d at 153 (internal quotation omitted).

[34] West Virginia Code § 55-7-13b (2015) defines "compensatory damages" as "damages awarded to compensate a plaintiff for economic and noneconomic loss."

[35] *Id*. § 55-7-13c(a) (2015).

[36] *Id*.

[37] *Id*. § 55-7-13d(a)(1) (2015).

[38] *Id*. § 55-7-13d(a)(2), (3).

Plaintiffs' public nuisance claim is a "legal" claim that seeks "damages" is one key consideration for both the jury trial right and applicability of the 2015 Act.

Under our decision in *Realmark v. Ranson*, the determination of whether a claim is legal or equitable requires examination of "the issues involved and the remedy sought[.]"[39] As to the issue in this case—public nuisance—we observe that "[c]ourts of equity have an ancient and unquestionable jurisdiction to prevent or abate public nuisance[.]"[40] But, we also observe the opposite. For example, while one court found that the public nuisance claim before it was equitable, it noted that nuisance claims seeking damages had, in some cases, been heard by a jury before the merger of law and equity.[41] As to the remedy sought by Plaintiffs—abatement—we have recognized that injunctive relief is frequently the means by which a public nuisance is prevented or abated.[42] But, other courts have recognized that an injunction may entail the payment of money by a

---

[39] *Realmark Dev.*, 214 W. Va. at 164, 588 S.E.2d at 153.

[40] *Town of Weston v. Ralston*, 48 W. Va. 170, 194, 36 S.E. 446, 456 (1900) (Brannon, J., concurring).

[41] *N.A.A.C.P. v. AcuSport, Inc.*, 271 F. Supp. 2d 435, 467 (E.D. N.Y. 2003). The court distinguished these cases from the public nuisance claim before it because the latter did not seek damages.

[42] *See, e.g., Duff v. Morgantown Energy Assocs. (M.E.A.)*, 187 W. Va. 712, 716, 421 S.E.2d 253, 257 (1992) (in the course of considering whether trial court properly enjoined alleged private and public nuisance, stating that "[w]hile courts generally grant injunctions to abate existing nuisances, there is also authority for courts to enjoin prospective or anticipatory nuisances").

defendant.[43]   Defendants analogize Plaintiffs' public nuisance claims and abatement remedy to other claims and remedies ultimately found to be legal for purposes of the jury-trial right, including a claim for unjust enrichment,[44] a claim for front pay (rather than reinstatement) under the Whistle-Blower Law,[45] an action to recover sums fraudulently transferred out of a bankruptcy estate,[46] a suit for damages couched as one to enforce an employee benefit plan's reimbursement provision pursuant to § 502(a)(3) of the Employee Retirement Income Security Act of 1974,[47] and a suit seeking damages in fraud that was essentially a tort action.[48]   These cases include language supportive of Defendants' position, generally—that monetary payments are damages—but they do not arise in the

---

[43] *Compare United States v. Price*, 688 F.2d 204, 213 (3d Cir. 1982) (payments to fund diagnostic study were appropriate component of injunctive relief because "[i]t is not unusual for a defendant in equity to expend money in order to obey or perform the act mandated by an injunction. Injunctions, which by their terms compel expenditures of money, may similarly be permissible forms of equitable relief. In all cases the question the court must decide is whether, considering all of the circumstances, it is appropriate to grant the specific relief requested") *with Jaffee v. United States*, 592 F.2d 712, 715 (3d Cir. 1979) (plea for injunction ordering United States to provide medical care for soldiers exposed to radiation was a "disguised claim for damages").

[44] *Realmark Developments*, 214 W. Va. at 164, 588 S.E.2d. at 164.

[45] *Thompson v. Town of Alderson*, 215 W. Va. 578, 581, 600 S.E.2d 290, 293 (2004).

[46] *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 49 (1989).

[47] *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 218 (2002).

[48] *See* Syl. Pt. 1, *Wilt v. Crim*, 87 W. Va. 626, 105 S.E. 812 (1921).

context of a public nuisance claim or abatement remedy. And, general statements may also be found that support the contrary proposition.[49]

Defendants have provided orders from actions pending in other states' courts and a federal district court analyzing public nuisance claims brought against prescription opioid manufacturers and distributors, among others. The Federal District Court of the Northern District of Ohio has ruled that similar, public nuisance claims are equitable.[50] The Supreme Court of the State of New York has ruled that similar, public nuisance claims are legal.[51] And, in a one-page order, the District Court of Cleveland County, State of Oklahoma, found that the State of Oklahoma's public nuisance claim was equitable.[52] Defendants have not brought to our attention a decision by any appellate court reviewing these orders.

We grant the extraordinary remedy of prohibition "to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any

---

[49] *See, e.g.*, *Curtis v. Loether*, 415 U.S. 189, 196 (1974) (indicating that the Supreme Court of the United States would not "go so far as to say that any award of monetary relief must necessarily be 'legal' relief").

[50] *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 4043938, at *1 (N.D. Ohio Aug. 26, 2019).

[51] *In re Opioid Litigation*, No. 400000/2017 (Sup. Ct. New York, May 19, 2020).

[52] *State of Oklahoma v. Purdue Pharma L.P.*, No. CJ-2017-816 (D. Ct. of Cleveland Cty., Ok. Apr. 16, 2019).

disputed facts[.]"[53] In view of the conflicting authorities outlined above, we cannot say now that the Panel's ruling—that Plaintiffs' public nuisance claims are not legal claims for damages that would trigger the constitutional jury trial right, or that are subject to the 2015 Act—is so clear-cut, or so plainly in contravention of a clear legal mandate as to merit issuance of the extraordinary remedy of prohibition on those grounds.[54] For that reason, we deny the writ requested by Petition No. 20-0751, challenging the Panel's August 4, 2020, order as it relates to the applicability of the 2015 Act to the State's public nuisance claim. And, we deny in part the writ requested in Petition in No. 20-0694, insofar as it seeks relief from (1) the Panel's July 29, 2020, order granting Plaintiffs' motion to strike notices of non-party fault and (2) the portions of the Panels' orders of February 19, 2020, and July 23, 2020, denying Defendants' requests for a jury trial of Plaintiffs' public nuisance claims (liability only) on the grounds that those claims are legal, and not equitable.

---

[53] *State ex rel. Vanderra Res., LLC*, 242 W. Va. at 40, 829 S.E.2d at 40 (internal quotation omitted).

[54] Defendants ask the Court to intervene in the extremely early stages of these cases. West Virginia is a notice pleading state and the underlying litigation is in its early days. *See, e.g.*, *Sticklen v. Kittle*, 168 W. Va. 147, 163, 287 S.E.2d 148, 157 (1981) ("Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues.") (internal quotation omitted). In discovery, Defendants will have the opportunity to ascertain the particulars of Plaintiffs' public nuisance theory and abatement remedy. Then, the Panel may require Plaintiffs to describe the claims and their remedy, with particularity, in their pre-trial memoranda. That description may clarify the application of the authorities discussed above to the public nuisance claims and the abatement remedy.

But, the preceding analysis does not dictate a blanket denial of the writ requested in Petition No. 20-0694. There, Defendants make an alternative argument against the Panel's Phase I Trial: that the Panel cannot conduct a bench trial on liability for Plaintiffs' public nuisance claims without violating Defendants' right to try Plaintiffs' *other*, indisputably legal claims to a jury.[55] For the reasons discussed below, we find that Defendants are entitled to a writ, as moulded, on this alternative ground.[56]

## B. *Overlapping Issues*

West Virginia Rule of Civil Procedure 18(a) enables joinder of legal and equitable claims.[57] Consequently, a single action may include claims that require a jury trial (i.e., claims for legal relief) and claims that do not. The question becomes then, in what order shall those claims be tried when they share a common issue? We addressed the

---

[55] As noted by the Solicitor General during oral argument, this alternative argument—and so our conclusion, below, to grant in part Petition No. 20-0694—does not apply to the State, which has brought claims for public nuisance and violation of the WVCCPA. As noted above, that portion of the Panel's August 4, 2020, order finding that the State does not seek damages for its claim under the WVCCPA is not challenged in this instance.

[56] Because we have determined that the Panel's ruling—Plaintiffs' public nuisance claims are not legal claims for damages—is not a clear error mandating an extraordinary remedy, we proceed to address Defendants' alternative argument. By analyzing Defendants' alternative argument, we do not endorse or shield from future review the Panel's ruling as to the non-legal nature of Plaintiffs' public nuisance claims and abatement remedy.

[57] W. Va. R. Civ. P 18(a) ("Joinder of Claims. A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal or equitable, as the party has against an opposing party.").

19

effect of joinder of legal and equitable claims upon the jury trial right in *Tenpin Lounge*. In that case, the West Virginia Human Rights Commission filed suit seeking specific performance of a conciliation agreement with Tenpin Lounge.[58]  Tenpin denied the allegations and demanded a jury trial.[59]  The Commission moved, essentially, to strike the jury demand, and the circuit court denied the motion.  The parties tried the case to a jury, which found for Tenpin Lounge.  The Commission appealed the judgment order and argued, in part, that the circuit court erred when it had allowed the Commission's specific performance claim to go to a jury.

We first stated that  "generally [] one is not entitled to a jury trial of equitable issues."[60]  So, the circuit court did not err when it allowed the Commission's equitable claim to go to a jury because the Commission did not have a right to a non-jury trial of that claim.[61]  We explained that:

> This matter may be summed up by the following quote from 2B Barron and Holtzoff, *Federal Practice and Procedure*, § 873, p. 32 (Rules ed. 1961): "The usual practice is to try the legal issues to the jury and to try the equitable issues to the court. Where there are some issues common to both the legal and equitable claims, the order of trial must be such that the jury first determines the common issues. The court may, if it chooses, submit all the issues to the jury. There is no constitutional right to a trial without a jury and reversible

[58] *Tenpin Lounge*, 158 W. Va. at 351, 211 S.E.2d at 351.

[59] *Id*. at 352, 211 S.E.2d at 351.

[60] *Id*. at 353, 211 S.E.2d at 352.

[61] *Id*. at 354, 211 S.E.2d at 352.

> error cannot be predicated upon the submission of equitable issues of fact to a jury." We adhere to the principles so expressed and accordingly find that the plaintiff's position is without merit. See *Hurwitz v. Hurwitz*, 78 U.S.App.D.C. 66, 136 F.2d 796, 148 A.L.R. 226 (1943); Lugar & Silverstein, W.Va.Rules, p. 308; Wright & Miller, *Federal Practice and Procedure*: Civil § 2334.[62]

*Tenpin Lounge* preserves the trial court's flexibility to order the trial, so long as a jury first decides the issues common to the legal and equitable claims.

Defendants argue here that common issues pervade the determination of public nuisance liability and Plaintiffs' legal claims. For example, the pleadings included in the appendix for Petition No. 20-0694 bear this out.[63] The complaint filed by the Monongalia County Commission, the Marion County Commission, the Doddridge County Commission, the Randolph County Commission, and the Upshur County Commission—included in its entirety in the appendix—contains ten claims: public nuisance, unjust enrichment, fraud by concealment, negligence and negligent marketing, fraud and intentional misrepresentation (manufacturer defendants), negligence and misrepresentation, negligence, malicious and intentional conduct, negligence or medical malpractice, and negligence and intentional diversion and distribution. Each claim

---

[62] *Id*. at 354–55, 211 S.E.2d at 352–53.

[63] During oral argument, counsel for city and county Plaintiffs acknowledged that there are legal claims in the cities' and counties' complaints. The appendix record does not include a complete complaint filed by a hospital plaintiff; but, the hospital plaintiffs do not oppose Defendants' representations that the complaints include legal claims, in addition to the hospitals' claims for public nuisance.

expressly incorporates the hundreds of factual allegations that precede it. Importantly, Plaintiffs do not disagree with Defendants' characterization of the overlap of their public nuisance claims (liability only) and legal claims, nor do they contend that those other claims are equitable and not legal. And, they do not protest that the legal claims are entirely independent of their public nuisance claims (liability only).[64] Without that opposition, we are left to conclude that Defendants have, in fact, identified overlapping issues among Plaintiffs' public nuisance (liability only) and legal claims. Applying *Tenpin Lounge*, a jury must decide those overlapping issues.

Plaintiffs contend that the Phase I Trial does not infringe on Defendants' jury trial rights because they will get to try Plaintiffs' legal claims to a jury—at some point. But that argument doesn't account for the logic that underpins *Tenpin Lounge* and similar, federal authority: the danger that a "prior judicial determination of the equitable claim effectively *may* well defeat the jury trial right on the legal claim because the determination of the claim's equitable aspects would prevent any relitigation of those issues, either through res judicata or collateral estoppel, whichever doctrine bears on the particular legal claim."[65] Plaintiffs suggest that those concerns "will not become ripe unless and until there

---

[64] *Compare* 9 CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2338 (4th ed. 2008) (stating that "there is no difficulty in giving the judge discretion to decide trial order if the legal issues are independent of the equitable issues, so that resolution of one will not affect the determination of the other. In cases of that type, the question merely is one of the court's administrative convenience and the judge's sense of how the trial of the case should proceed.").

[65] *Id*. at § 2305 (emphasis added). *See also In re Nat'l Prescription Opiate Litig.*, 2019 WL 4621690, at *3 ("Also supporting the decision to try nuisance liability to the jury

is a Phase III trial on damages claims (following the nuisance liability and abatement remedy proceedings) or other causes of action that do not sound in equity." Again, we are not persuaded. If a court waits, as Plaintiffs suggest, then it acts in a fashion opposite to this Court's guidance in *Tenpin Lounge*, and undervalues this Court's statement that "reversible error cannot be predicated upon the submission of equitable issues of fact to a jury."[66]

Finally, Plaintiffs argue that the Panel may exercise its discretion to craft an efficient trial plan, and that the Panel appropriately exercised that discretion when it ordered the Phase I Trial. We agree that courts managing highly complex litigation have and need "significant flexibility and leeway with regard to their handling of these cases."[67] "[I]nnovative means of trial management" are necessary to expeditiously resolve matters

---

is Supreme Court authority holding clearly that all facts found by a jury in adjudicating legal claims, which are also relevant to the plaintiffs' equitable claims, are binding on a court's subsequent determination of those equitable claims.").

[66] *Tenpin Lounge*, 158 W. Va. at 354, 211 S.E.2d at 53 (internal quotation omitted). Plaintiffs encourage us to adopt the Panel's stance that *Camden-Clark*, 212 W. Va. at 752, 575 S.E.2d at 362, is limited to the employment context, so the case is neither controlling nor persuasive. While we do not agree that our holding in *Camden-Clark* cannot apply outside the employment context, we also recognize that the case was, in part, driven by the Court's concern that an employer could "game" the system if permitted to "seek an injunction before taking action adverse to an employee, and thus greatly reduce the likelihood that a jury would ever hear that employee's potential counterclaims." *Id*. at 761, 575 S.E.2d at 371. Even if *Camden-Clark* is distinguishable, *Tenpin Lounge* still squarely applies.

[67] *State ex rel. Mobil Corp. v. Gaughan*, 211 W. Va. 106, 111, 563 S.E.2d 419, 424 (2002) (citing *State ex rel. Appalachian Power Co. v. MacQueen*, 198 W. Va. 1, 6, 479 S.E.2d 300, 305 (1996)).

like the Opioid Litigation,[68] which is why a presiding judge is empowered "to adopt any procedures deemed appropriate to fairly and efficiently manage and resolve Mass Litigation."[69] But, those goals cannot override a party's constitutionally-protected right to a jury trial.[70] The Manual for Complex Litigation expressly recognizes this and advises caution in similar circumstances.[71]

Defendants have demonstrated that extraordinary relief is warranted to preserve their right to try Plaintiffs' legal claims to a jury. To the extent that the public nuisance liability determination and Plaintiffs' legal claims present common issues, the order of trial must be such that the jury first determines those common issues. For that reason, we grant in part and deny in part the writ requested in Petition No. 20-0694. We emphasize that the issued writ is narrow and impacts only those issues common to determination of liability for public nuisance and Plaintiffs' legal claims.[72]

---

[68] *State ex rel. Allman v. MacQueen*, 209 W. Va. 726, 731, 551 S.E.2d 369, 374 (2001).

[69] W. Va. Trial Ct. Rule 26.08.

[70] *See* Syl. Pt. 3, *State ex rel. Appalachian Power Co.*, 198 W. Va. at 1, 479 S.E.2d at 300 ("A creative, innovative trial management plan developed by a trial court which is designed to achieve an orderly, reasonably swift and efficient disposition of mass liability cases will be approved so long as the plan does not trespass upon the procedural due process rights of the parties.").

[71] MANUAL FOR COMPLEX LITIGATION (FOURTH) § 11.632 (2007).

[72] *See Tenpin Lounge* 158 W. Va. at 354, 211 S.E.2d at 353 ("'Where there are some issues common to both the legal and equitable claims, the order of trial must be such that the jury first determines the common issues. The court may, if it chooses, submit all the

## IV. CONCLUSION

For the reasons discussed above, we deny the writ sought in Petition No. 20-0751, and grant in part and deny in part the writ sought in Petition No. 20-0694.

PETITION FOR PROHIBITION NO. 20-0751 DENIED
PETITION FOR PROHIBITION NO. 20-0694 DENIED IN PART AND
GRANTED IN PART.

---

issues to the jury. There is no constitutional right to a trial without a jury and reversible error cannot be predicated upon the submission of equitable issues of fact to a jury.'") (quoting 2B Barron and Holtzoff, FEDERAL PRACTICE AND PROCEDURE, § 873, p. 32 (Rules ed. 1961)).